UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAVALIER D. KNIGHT <br><br> Plaintiff, <br><br> - against – <br><br> NEW YORK CITY, and KEECHANT L. SEWELL, as the Statutory Handgun Licensing Officer and the POLICE COMMISSIONER OF NEW YORK CITY, and her successors in office; <br><br> Defendants. | Case 1:22-cv-03215-VEC-VF <br><br> **COMPLAINT FOR VIOLATIONS OF:** <br><br> **42 U.S.C. § 1981; 42 U.S.C. § 1983; 2nd AMENDMENT; COMMERCE CLAUSE; 3rd PARTY STANDING; NY CIVIL RIGHTS LAW § 4; ARTICLE III ECONOMIC INJURY-IN-FACT; PROCEDURAL DUE PROCESS OF THE 14th AMENDMENT; EQUAL PROTECTION CLAUSE OF THE 14th AMENDMENT; and PRIVILEGES AND IMMUNITIES CLAUSE OF ARTICLE IV, SECTION 2** |

## 1) <u>Summary</u>

**1.** This is a case of first impression. Cavalier Knight, LLC is an African American-owned small business. And PASSPort vendor with the Mayor's Office of Contract Services. With a commodity of 384 - Law Enforcement Police Equipment and Supplies. Defendants refuse to issue Knight two required state business licenses.

**(a)** Knight can buy and sell shotguns and rifles having barrels less than (18) inches in length, certain firearms described as any other weapons, machine guns, firearm mufflers, and silencers.

**2.** New York City (hereinafter the City) requires Knight to possess a state Carry Business License (hereinafter CBL) to handle inventory and the State of New York (hereinafter the State) requires Knight to possess a state Firearms Dealer's License (hereinafter FDL) to sell handguns and/or ammunition. This State CBL denial *de-facto* prohibits Knight from bidding on City contracts. In violation of the Commerce Clause, the 2nd Amendment, the Privileges and Immunities Clause, and 42 U.S.C. § 1981, which is an Article III economic injury-in-fact, 42 U.S.C. § 1983.

**(1)**    <u>**Unconstitutional or Held Preempted by Federal Law**</u>

**3.**     Knight has presented (210) state constitutional, statutory provisions, and municipal ordinances held unconstitutional or held to be preempted by federal law. And cited (47) U.S. Supreme Court cases. Including a *proper cause* challenge currently pending before the U.S. Supreme Court, <u>*New York State Rifle & Pistol Association Inc. v. Bruen*</u>, 20-843 U.S. (2021). However, that case does not address the Commerce Clause, 2nd Amendment, Privileges and Immunities, 42 U.S.C. § 1981, and Article III economic injury-in-fact, violations within Knights Complaint. (Ex 1)

## JURISDICTION AND VENUE

**4.**     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 1343, § 2201, § 2202, and 42 U.S.C. § 1983 and § 1988. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

**5.**     Plaintiff, Cavalier D. Knight, is a natural person, a United States citizen, and a resident of New York County.

**6.**     Defendant, New York City is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

**7.**     Defendant, Keechant Sewell, is the New York City Police Commissioner. In that capacity, Commissioner Sewell is the statutory handgun licensing officer for the five boroughs that comprise New York City. Commissioner Sewell implements her licensing authority through the NYPD License Division.

## JURY TRIAL

**8.**     As Knight seeks equitable remedies, no demand is made for a jury trial.

**Table of Contents**

1) Summary ................................................................................................. 1

   (1) Unconstitutional or Held Preempted by Federal Law ............................ 2

   (2) Injunctive Relief Allegations ............................................................ 5

   (3) Dred Scott v. Sandford 60 U.S. 393 (1856) ...................................... 6

   (4) CPLR 5601[b][1] - Substantial Constitutional Question .......................... 7

   (5) Constutional Challenge: 38 R.C.N.Y. & NYC Admin. Code .................. 8

   (6) Substantial Effect on Interstate Commerce ...................................... 8

   (7) 18 U.S. Code § 923 - Licensing .................................................... 10

2) Preliminary Statement ...................................................................... 10

   (8) Article III Economic Injury-In-Fact ............................................... 12

   (9) NYC PASSPort - Mayors Office of Contract Services ......................... 13

   (10) Operating & Renewing ............................................................... 13

   (11) NYS PL § 400.00(1)(n) .............................................................. 13

   (12) Implicit Field Preemption ............................................................ 14

   (13) CAPA - Section 1042(a)(4). Regulatory Agenda .............................. 15

   (14) Defendants Require a State CBL to Handle Inventory ....................... 15

   (15) 27 C.F.R. § 478.50(a) ............................................................... 16

   (16) Error of Law ........................................................................... 20

   (17) 27 C.F.R. § 478.100(a)(1) .......................................................... 20

   (18) NYS PL § 400.00(1)(n) .............................................................. 21

   (19) Federal Firearms License 01: Denial and Appeal ............................ 22

   (20) Canons of Statutory Construction ............................................... 23

   (21) IRS: Business Use or as a Principal Place of Business ...................... 24

   (22) Third-Party Standing of Customers .............................................. 24

   (23) ATF Shipping Firearms .............................................................. 25

   (24) Article III Economic Injury-In-Fact ............................................... 27

   (25) ATF: Intent to Sell Firearms ...................................................... 27

3) Statement of Facts ........................................................................... 30

   (26) (2013) 1st State CBL Application Denial ........................................ 30

   (27) State CBL Appeal of Application Disapproval .................................. 30

(28) State CBL Article 78 - 101556/2014 - Petition ........................................ 30

(29) State CBL Article 78 - 101556/2014 - Dismissed ................................. 31

(30) NYPD License Division: Systemic Corruption .................................. 31

(31) NYPD: Admits Violating Commerce Clause I ................................... 32

(32) State Firearm Dealer's License Application .................................... 33

4) NYPD: Admits Violating Commerce Clause II ................................... 34

(33) NYS PL § 400.00(8) ........................................................................... 35

(34) 38 R.C.N.Y. § 4-03(k) ........................................................................ 35

(35) Federal Preemption ........................................................................... 37

(36) 38 R.C.N.Y. § 5-03 ............................................................................ 40

(37) NYS PL § 10.00 - Definitions ............................................................ 41

(38) Operation Nexus - NYPD Shield ....................................................... 43

5) Protection For Businesses Providing Related Services ..................... 44

(39) 3rd Party Constitutional Rights of Gun Stores Customers .................. 47

(40) (2017) 2nd State CBL Application Denial ............................................ 48

(41) (2017) State CBL Reasons For Denial ............................................... 48

(42) Procedural Due Process Violations .................................................... 49

(43) 42 U.S.C. § 1981: The Civil Rights Act of 1866 ................................. 52

(44) (2019) Article 78 - 101449/2019: Mandamus to Compel ..................... 52

(45) State CBL Notice of Disapproval After Appeal ................................. 52

(46) (2020) Article 78 - 151725/2020: Petition ........................................ 53

6) Injury-In-Fact, Causation & Redressability ....................................... 53

7) Waiting Periods are Unconstitutional ............................................... 54

(47) Privileges and Immunities Clause of Article IV, Section 2 ................. 64

8) No Collateral Estoppel: False Written Statements ............................ 65

(48) No Collateral Estoppel: No Challenge to NYS PL § 400.00 ............... 67

(49) No Collateral Estoppel: NYPD Admits New Litigation ..................... 68

9) Article 78 - 151725/2020: Petition Summarily Dismissed ................. 70

(50) Jonathan Zeron v. Dermot F. Shea, et al., No. 154821/2020 ............... 75

**(2)**     **Injunctive Relief Allegations**

**(a)**     **NYS PL 400.00(6):** The only authority granted to the licensing authority in the New York City, the Police Commissioner, is set forth in NYS PL § 400.00(6), which requires an individual with a non-restricted license who resides outside of the 5 boroughs of New York City to apply for an endorsement of their NYS Pistol License - permission from the Police Commissioner - should they desire to carry concealed within New York City, subject to certain exemptions.

**9.**     Federal Firearm Licensees 01 (hereinafter FFL 01s) are being continuously injured, in fact, by Defendants' enforcement of 38 R.C.N.Y. § 4-03 (t), (1), (3), (4), (5); § 5-03 (a), (b); § 5-10 (i); and NYC Admin. Code §§ 10-302. 1 (b) and (c), (1). Which prohibits FFL 01s from receiving inventory and selling handguns and/or ammunition in interstate commerce. Whereas prohibiting law-abiding citizens from acquiring handguns from Knight and/or FFL 01s in the City strikes at the core of the 2nd Amend.; right of law-abiding citizens to possess handguns for self-defense.

**(a)**     **Police Commissioners Oath:** "I do hereby pledge and declare that I'll support the **Constitution of the United States** and the Constitution of the State of New York and that I'll faithfully discharge the duties of the position of Police Commissioner of the New York City Police Department. according to the best of my abilities so help me God."

**10.**     Knight and/or FFL 01s are suffering irreparable harm by having to choose between exercising their constitutional rights to engage in interstate commerce and being subject to criminal prosecution. FFL 01s should not have to risk criminal prosecution to exercise their fundamental right to pursue one's profession or common calling. This is one of the limited numbers of foundational rights protected under the Privileges and Immunities Clause of Article IV, Section 2. FFL 01s will continue to suffer such harm without the requested relief under, 42 U.S.C. § 1983.

**11.**     Defendants deny the allegations stated herein.

12.     Not only are state courts allowed to rule on federal law, but they must also enforce federal law to perform their duty of enforcing laws valid within the state. As there were constitutional and/or federal law issues that the Court(s) below failed to adjudicate. This failure to follow simple guidelines of their post renders their actions no longer a judicial act but an individual act as the act represents their prejudices and goals. Caselaw states that when a judge acts as a trespasser of the law or a judge does not follow the law, s/he then loses subject matter jurisdiction and the judge's orders are void, and of no legal force or effect. As per the New York County Supreme Court, the New York State Appellate Division of the Supreme Court 1st Department, and the New York State Court of Appeals. Within the State of New York because Knight is an African-American small business owner within the City who can legally sell firearms civil and/or constitutional rights do not apply to him.

**(3)**     **Dred Scott v. Sandford 60 U.S. 393 (1856)**

**(a)**     Finally, in the infamous Dred Scott decision, the U.S. Supreme Court showed that it shared this understanding that citizenship excluded blacks and explained the relationship between citizenship and the carrying of arms:

**(b)**     It would give to persons of the negro race, who were recognized as citizens in any one State of the Union, the right to enter every other State whenever they pleased, singly or in companies, without pass or passport, and without obstruction, to sojourn there as long as they pleased, to go where they pleased at every hour of the day or night without molestation, unless they committed some violation of law for which a white man would be punished, and it would give them the full liberty of speech in public and in private upon all subjects upon which its own citizens might speak; to hold public meetings upon political affairs ***and to keep and carry arms wherever they went***. And all of this would be done in the face of the subject race of the same color, both free and slaves, inevitably producing discontent and insubordination among them and endangering the peace and safety of the State.

**(4)** **CPLR 5601[b][1] - Substantial Constitutional Question**

**13.**     Does Title 38 - R.C.N.Y. and/or NYC Administrative Code; discriminate against interstate commerce; and violate Title 42 - U.S.C. § 1983; by allowing FFL 01s with a brick & mortar store to only sell constitutionally protected goods and/or services from that physical location to residents of the City of New York; while prohibiting Knight and/or FFL 01s from selling their goods and/or services; intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce; because Knight and/or FFL 01s do not possess a brick & mortar store in the City of New York; which is used to prohibit Knight from receiving a state FDL to sell handguns and/or ammunition and a state CBL to handle inventory; in violation of the Equal Protection Clause of the 14th Amendment; while prohibiting Knight's ability to perform work; is an Article III economic *injury-infact;* that violates the Privileges and Immunities Clause; and the third-party constitutional rights of Knights customers; who are all law-abiding citizens prohibited from acquiring handguns from Knight in interstate commerce; which strikes at the *core* of the 2nd Amendment right to acquire handguns to possess for self-defense. (Ex 2 - Parts: A, B, C1, C2, C3)

**14.**     How can violations of 42 U.S.C. § 1981; 2nd Amend.; Commerce Clause; 3rd Party Standing; NY Civil Rights Law § 4; Article III Economic Injury-In-Fact; Procedural Due Process of the 14th Amend.; Equal Protection Clause of the 14th Amend.; and Privileges and Immunities Clause of Article IV, Section 2. Not present a substantial constitutional question? When the U.S. Supreme Court granted Certiorari to *New York State Rifle & Pistol Association Inc. v. Bruen*, 20-843 U.S. (2021), which is predicated on the same question as Knights State CBL denial.

**(5)      Constutional Challenge: 38 R.C.N.Y. & NYC Admin. Code**

**15.**      Knight constitutionally challenged 38 R.C.N.Y. and/or NYC Admin. Code as both *facially* violate the Commerce Clause and *as-applied* to Knight and/or FFL 01s throughout the country. Defendants require Knight and/or FFL 01s to possess a State CBL to handle inventory. Then *arbitrarily* refuse to issue a State CBL to Knight and/or FFL 01s whereas prohibitions on interstate commerce are a form of regulation.

**16.**      Defendant's aver that the application for a State CBL requires all FFL 01s to open a brick & mortar store in the City as a *prerequisite* to apply for a State FDL. The cost of opening a brick & mortar store is *cost-prohibitive* and *de facto* adds to the actual cost of the application for a State FDL. Defendants denied Knights State CBL because he does not possess a brick & mortar store and a State FDL. Requiring Knight to open a brick & mortar store *de facto* burdens his small business through local regulation via financial attrition in violation of the Commerce Clause.

**(6)      Substantial Effect on Interstate Commerce**

**17.**      In 1824, the Supreme Court decided its first major Commerce Clause case in <u>*Gibbons*</u>. Gibbons and Ogden were competitors both operating steamboats that ran from New York to New Jersey. Ogden was granted a monopoly by the New York legislature and requested and was issued, an injunction from the state of New York against <u>*Gibbons*</u>' competing steamboat business. The Supreme Court found the injunction was invalid because it conflicted with a federal statute. The authority for the federal statute itself came from the Commerce Clause. *See*, <u>*Gibbons v. Ogden*</u>, 22 U.S. 1 (1824). (Ex 3 - Part A: 01)

18.     The case is important because the New York injunction was not to be enforced in any state other than New York, and so it might appear that the federal statute here should not reach into the state. The Court found, however, that the Commerce Clause empowered Congress to pass acts that would have an effect within a single state so long as the activity regulated had some commercial connection with another state. Otherwise, Congressional power to act in some cases would be only illusory, as a state could prevent federal law from having full force and effect.

19.     Importantly, the _Gibbons_ Court pointed out that no area of interstate commerce was reserved for control by the states. At the Court, _Gibbons_ pointed to the fact that he obtained a license from the _federal government_ to conduct his steamboat business between ports in New York and New Jersey under the federal Coasting Act of 1793. He argued that the monopoly maintained by New York law and the injunction granted by the New York court seemed to conflict with this act of Congress, and should be struck down under the _Supremacy Clause_.

20.     A unanimous decision from the Supreme Court did just that. Chief Justice John Marshall spent a majority of the written opinion investigating whether or not Congress had the authority to regulate and license commercial maritime activity under the Commerce Clause. The Court held that the "power to regulate commerce extends to every species of commercial intercourse … among the several states," and included the regulation of interstate commercial maritime routes. Marshall asserted that this kind of power is covered under the Commerce Clause because the Founders intended as much when they authored the Constitution.

21.    Like *Gibbons* Knight possesses a federal license e.g.; FFL 01 issued by the U.S. Attorney General to engage in interstate commerce. Therefore 38 R.C.N.Y. and/or NYC Admin. Code cannot be used to prohibit Knight and/or FFL 01s from engaging in interstate commerce with law-abiding citizens throughout the country.

**(7)    18 U.S. Code § 923 - Licensing**

**(a)**    No person shall engage in the business of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition, until he has filed an application with and received a license to do so from the Attorney General.

22.    38 R.C.N.Y. and/or NYC Admin. Code conflict with the authority of Congress, to regulate commerce within the State and should be struck down under the *Supremacy Clause* just like the New York steamboat licensing scheme in *Gibbons*.

## 2)    Preliminary Statement

23.    Defendants require Knight and all FFL 01s in the country to possess a brick & mortar store in the City. As a prerequisite to applying for a State FDL before they can sell handguns and/or ammunition in the City. However, this prohibits all FFL 01s outside of the City from conducting any business in interstate commerce within the City. Which is a violation of the Commerce Clause and the 3rd party 2nd Amendment rights of all FFL 01s customers. By prohibiting law-abiding citizens outside of the City from acquiring handguns for self-defense in interstate commerce via mail-order and/or e-commerce from FFL 01s who do not possess a brick & mortar store within the City. Defendants have not narrowly tailored their rules which prohibit Knight and/or FFL 01s from receiving a State FDL and/or State CBL to sell their constitutionally protected goods and/or services in interstate commerce.

24.     Here, the requirement that all wine be shipped through a New York warehouse is a precondition to direct consumer sales. We recognize that "state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere . . . ha[ve] been declared to be virtually *per se illegal.*" See, <u>Swedenburg v. Kelly</u>, 358 F.3d 223 (2d Cir. 2004). (Ex 3 - Part A: 02)

25.     The Court(s) below erred legally and factually in virtually every aspect of this case, and its decisions, which have unnecessarily lengthened this litigation, even more, and represents a clear abuse of discretion for which mandamus is an appropriate remedy. The Court(s) below allowed Defendants to regulate Knight's business out of business. By the lack of judicial oversight and ignoring Knight's FFL 01 and the U.S. Supreme Court precedent set in <u>Gibbons v. Ogden</u>, 22 U.S. 1 (1824).

26.     Defendants have unlawfully made possession of a brick & mortar store in the City by Knight and/or all FFL 01s in the country. A mandatory provision of the application to apply for a State FDL in violation of NYS PL § 400.00(1)(n). And made possession of a brick & mortar store and a State FDL in the City by Knight and/or all FFL 01s in the country. Mandatory prerequisites to apply for a State CBL in violation of NYS PL § 400.00(2)(f).

27.     What other counties within the State require businesses in the private sector to invest hundreds of thousands of dollars into opening a brick & mortar store in violation of the Equal Protection Clause of the 14th Amendment and the Privileges and Immunities Clause of Article IV, Section 2? Before they are allowed to apply for any state licenses required to conduct business under NYS PL § 400.00?

28.    This prohibits the ability of Knight and/or FFL 01s to perform work which is an Article III economic injury-in-fact. And prohibiting law-abiding citizens from the lawful acquisition of handguns for self-defense. Strikes at the *core* of the 3rd party standing of all law-abiding citizens in the country who cannot acquire constitutionally protected goods and/or services under the 2nd Amendment from Knight and/or FFL 01s within the City. Defendant's prohibitions on interstate commerce *facially* violate the Commerce Clause and *as-applied* to Knight and/or FFL 01s. And their prohibitions on acquiring handguns violate 3rd party, 2nd Amendment rights and are *repugnant* to that clause of the constitution of the United States, which authorizes Congress to regulate commerce, so far as the said acts prohibit FFL 01s licensed, according to the laws of the United States, for carrying on the firearms trade, from selling such goods within interstate commerce. Therefore 38 R.C.N.Y. and/or NYC Admin. Code are *repugnant* to the said Constitution, and void.

   **(8)    <u>Article III Economic Injury-In-Fact</u>**

29.    The Dept. of Homeland Security has designated FFL 01s as Essential Critical Infrastructure Workers. Cavalier Knight, LLC has been an SBA HUBZone certified disadvantaged small business since (2010), an NYC PASSPort vendor since (2010), a federal SAM vendor since (2014), and an NYS Contract System vendor since (2016). Knight has possessed an FFL 03 - Collector of Curios and Relics since (2010) and an FFL 01 - Dealer in Firearms since (2011) with a Class 3 SOT since (2020). An NYPD Rifle & Shotgun Permit since (2008) and an NYPD Premises License since (2010). Knight has (10) full carry licenses from AZ, CT, DC, FL, MD, ME, NH, RI, UT, and VA. His MA license is also pending issuance. (Ex 4 - Part A: 01 - 10)

**(9)   NYC PASSPort - Mayors Office of Contract Services**

**(a)**   The City of New York procures more than $20 billion dollars of goods and services every year from outside contractors, ranging from nonprofits providing services in our communities to contractors building and maintaining our infrastructure to companies supplying administrative goods and services that enable City Agencies to function effectively and many more. These contractors include a diverse pool of entities in a wide range of industries.

**30.**   As a PASSPort vendor with the Mayor's Office of Contract Services, the City requires Knight to possess a State CBL to handle inventory. (Ex 4 - Part B: 11)

**(10)   Operating & Renewing**

**(a)**   All employees handling inventory *must possess* licenses or permits issued by the License Division, such as a Carry Business License or a Premises Business License in order to handle inventory.

**31.**   Knight has a commodity of 384 - Law Enforcement Police Equipment and Supplies. So why are Defendants using 38 R.C.N.Y. and/or NYC Admin. Code to *arbitrarily* prohibit Knight and/or FFL 01s from engaging in interstate commerce with the NYC Police Department? This is a *conflict of interest* whereas the systemic prohibition on Knight's ability to make and enforce contracts with the City is a violation of 42 U.S.C. § 1981 - The Civil Rights Act of 1866. The State also requires Knight and/or FFL 01s to possess a State FDL to sell handguns and/or ammunition.

**(11)   NYS PL § 400.00(1)(n)**

**(a)**   concerning whom no good cause exists for the denial of the license. No person shall engage in the business of gunsmith or dealer in firearms unless licensed pursuant to this section. An applicant to engage in such business shall also be a citizen of the United States, more than twenty-one years of age and maintain a place of business in the city or county where the license is issued. For such business, if the applicant is a firm or partnership, each member thereof shall comply with all of the requirements set forth in this subdivision and if the applicant is a corporation, each officer thereof shall so comply.

32.     This egregious abuse of administrative power has caused Knight's small business irreparable harm by prohibiting him from handling inventory. And *de facto* prohibiting him from bidding on any federal SBA HUBZone contracts; federal System for Award Management (SAM) contracts; NYS Contract System contracts; and NYC PASSPort contracts. In violation of 42 U.S.C. § 1981; the Commerce Clause; Equal Protection Clause of the 14th Amendment; Privileges and Immunities Clause of Article IV, Section 2; and is an Article III Economic Injury-In-Fact; (Ex 4 - Part B: 12)

### (12) <u>Implicit Field Preemption</u>

33.     Where the state has preempted the field, 38 R.C.N.Y. and/or NYC Admin. Code regulate the same subject matter and are deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law(s) actually conflict with a state-wide statute <u>*Albany Area Bldrs. Assn. v. Town of Guilderland,*</u> 74 NY2d at 377 N.Y. (1989). Thus, when the legislature has demonstrated its intent to preempt the field, all local ordinances e.g. 38 R.C.N.Y. and/or NYC Admin. Code are preempted, regardless of whether they actually conflict with the state law (*id.; see* <u>*Jancyn Mfg. Corp. v. County of Suffolk,*</u> 71 NY2d at 97 (N.Y. 1987); <u>*People v. De Jesus,*</u> 54 NY2d at 468-470 (N.Y. 1981); <u>*Matter of Ames v. Smoot,*</u> 98 AD2d at 119-124) (N.Y. 1984). (Ex 3 - Part A: 03, 04, 05, 06)

34.     Accordingly, in light of the comprehensive and detailed regulatory language and scheme of Penal Law § 400.00, which demonstrates the Legislature's intent to preempt the field of firearm regulation, it preempts 38 R.C.N.Y. and/or NYC Admin. Code. *See,* <u>*Chwick v. Mulvey*</u>, 2010 NY Slip Op 09911. (Ex 3 - Part A: 07)

35.     Field preemption is implied when either the purpose and scope of the regulatory scheme will be so detailed or the nature of the subject of regulation will be such that the court may infer a legislative intent to preempt, even in the absence of an express statement of preemption. Defendants state that Knights FFL 01 grants no authority to conduct business in the State. (Ex 4 - Part B: 13, pp. 15 to 19)

36.     The decisions of the Court(s) below are an improvident exercise of *judicial discretion* and *judicial overreach* that reflects the Court's misunderstanding about the nature of Knight's irreparable harm, the structure of these kinds of constitutional claims, and the proper decision method for evaluating alleged infringements of 2nd Amendment rights. The irreparable harm and economic injury to Knight's small business. And the violation of the 3rd party standing of the 2nd Amendment rights of Knight's and/or FFL 01s customers cannot be remedied by damages. "Whereas if a state converts a right into a privilege, the citizen can ignore the license and fee and engage in the right (liberty) with impunity." *See, Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969). (Ex 3 - Part A: 08)

**(13)   CAPA - Section 1042(a)(4). Regulatory Agenda**

**(a)**     (a)(4) an identification, to the extent practicable, of all relevant *federal*, *state*, and local laws and rules, including those which may duplicate, overlap or conflict with the proposed rule; (Ex 4 - Part B: 14)

**(14)   Defendants Require a State CBL to Handle Inventory**

37.     Defendants require all FFL 01s to possess a State CBL or State Premises Business License to handle inventory. However, City zoning laws, prohibit Knight from storing inventory locally at his place of business.

38.     However, under 27 C.F.R. § 478.50(a) inventory can be stored at off-site storage locations throughout the country.

**(15)   [27 C.F.R. § 478.50(a)](#)**

**(1)**     The license covers the class of business or the activity specified in the license at the address specified therein. A separate license must be obtained for each location at which a firearms or ammunition business or activity requiring a license under this part is conducted except:

**(a)**     <u>No license is required to cover a separate warehouse used by the licensee solely for storage of firearms or ammunition</u> if the records required by this part are maintained at the licensed premises served by such warehouse;

**(b)**     A licensed collector <u>may acquire curios and relics at any location</u>, and dispose of curios or relics to any licensee or to other persons who are residents of the State where the collector's license is held and the disposition is made;

**(c)**     <u>A licensee may conduct business at a gun show pursuant to the provision of § 478.100;</u>

39.     The only applicable license that allows Knight and/or FFL 01s to handle inventory that requires transportation to gun shows and/or off-site storage is the State CBL. How can Defendants aver that FFL 01s lack *proper cause* to receive a State CBL? When FFL 01s are the only businesses that *must possess* a State CBL to handle an inventory of handguns. Defendants mandate that Knight and/or FFL 01s *must possess* a State CBL to handle inventory, then *a fortiori* this *mandate* must satisfy the *proper cause* requirement for Knight and/or FFL 01s to receive a State CBL for that stated purpose. Defendants were not regulating any health and/or public safety concerns within their police power. When they used 38 R.C.N.Y. and/or NYC Admin. Code to deny Knights State CBL. This prohibits Knight from acquiring inventory. Which *de-facto* prohibits him from selling firearms intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce.

40.     If the *core* of the 2nd Amendment right to possess handguns is *self-defense* which promotes the *public safety* of all law-abiding citizens. Then Defendant's prohibition on Knight and/or FFL 01s ability to sell handguns and/or ammunition in interstate commerce to those law-abiding citizens. Conflicts with the government's transcendent interest in promoting *public safety* and *facially* violate the *Supremacy Clause*. and *as-applied* to Knight and/or FFL 01s.

41.     Defendants aver that because Knight does not possess a brick & mortar store in the City. He is ineligible to receive a State FDL and/or State CBL. Therefore all FFL 01s with a brick & mortar store and a State FDL in the City. Have *proper cause* to receive a State CBL yet they are also denied. Defendants require FFL 01s to possess a State CBL to handle inventory. Then *arbitrarily* deny them for lack of *proper cause*. Therefore the requirement to possess a brick & mortar store in the City *facially* violates the Commerce Clause and the Privileges and Immunities Clause of Article IV, Section 2 and *as-applied* to Knight and/or FFL 01s.

42.     The <u>*Heller*</u> test is a hardware test. Is the firearm commonly owned by law-abiding citizens? Is it owned by those citizens for lawful purposes? If the answers are yes, the <u>*Heller*</u> test is over. The firearms are protected. Thus, when a law bans possession of an item, under <u>*District of Columbia v. Heller*</u>, 554 U.S. 570 the Court should first ask whether the banned item qualifies as arms under the 2nd Amendment. If so, the Court should ask only whether the banned item is (1) commonly used, (2) by law-abiding citizens, (3) for lawful purposes, e.g. self-defense *see*, <u>*Heller*</u>, 554 U.S. at 625, 635. (Ex 3 - Part A: 09)

**43.** If so, then the banned item is categorically protected under the 2nd Amendment and no further analysis is needed. *Id*. at 634-35. By adopting this test, the Court would honor the *text, history, and tradition* of the 2nd Amendment as instructed in *Heller*, *see id*. at 628-29. *Heller* held that the 2nd Amendment protects "the individual right to possess and carry weapons in case of confrontation." 554 U.S. at 592. And it explained that the term bear, as used in the text, means to wear or to carry … upon the person or in the clothing or in a pocket, for the purpose … of being armed and ready for offensive or defensive action in case of conflict with another person. *Id*. at 584 (quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting)). (Ex 3 - Part A: 10)

**44.** Because conflict with another person often occurs outside one's home, the right to bear arms necessarily includes a right to carry a handgun outside the home. *See, Wrenn*, 864 F.3d at 657; Indeed, there would have been no need for the historical restrictions on carrying handguns in sensitive places, *Heller*, 554 U.S. at 626, if the right were confined to the home. (Ex 3 - Part A: 11)

**45.** Defendants aver that 38 R.C.N.Y. and/or NYC Admin. Code were promulgated under NYS PL § 400.00 to advance the state's interest in public safety. However, local ordinances 38 R.C.N.Y. and/or NYC Admin. Code are preempted by NYS PL § 400.00. Which is the exclusive statutory mechanism for the licensing of firearms in the State of New York. *See, Matter of O'Connor v. Scarpino*, 83 NY2d 919, 920. (Ex 3 - Part A: 12)

46.     Defendants aver that Knight and all FFL 01s in the country must possess a brick & mortar store under 38 R.C.N.Y. § 4-03 (t) and/or NYC Admin. Code § 10-302 (c), (1). As a *prerequisite* to applying for a State FDL to sell handguns and/or ammunition in the City. However, Defendant's claim that Knight and/or FFL 01s must possess a brick & mortar store is a condition created by the Defendants. If a commercial brick & mortar store is the only location that can be utilized as a place of business for a firearms dealer. The legislature would have specified this within NYS PL § 400.00(1)(n). Whereas numerous FFL 01s throughout the State conduct business as an  FFL 01 directly from their homes. (Ex 4 - Part B: 15, 16, 17)

47.     Like the cases of *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742. Here the Defendants ban selling an entire class of very popular firearms that are lawful under federal law and the laws of most states and that are commonly held by law-abiding citizens for lawful purposes. Under no level of heightened scrutiny can 38 R.C.N.Y. and/or NYC Admin. Code survive. (Ex 3 - Part A: 09, 13)

48.     Defendant's prohibition on the sales of handguns and/or ammunition intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce strikes at the core of the 2nd Amendment right. *Heller* held that the core 2nd Amendment right is law-abiding citizens purchasing handguns for *self-defense* 554 U.S., at 635; *see also Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012) (2nd Amendment guarantees are at their zenith within the home). *Self-defense* [is] the central component of the right itself. (Ex 3 - Part A: 14)

**(16)** **Error of Law**

**49.** The Court below erred by concluding that the constitutional challenges to 38 R.C.N.Y. and/or NYC Admin. Code within Knights second Art. 78 - 151725/2020 also applied to Knights first Art. 78 - 101556/2014. Within Art. 78 - 101556/2014 Knight was denied as a body armor dealer. Within Art. 78 - 151725/2020 Knight was denied as an FFL 01 who sells constitutionally protected goods and/or services. How do denials for two different reasons invoke collateral estoppel? (Ex 4 - Part B: 18, 19)

**50.** Collateral estoppel would require a prior decision that So Ordered that 38 R.C.N.Y. and/or NYC Admin. Code preempts NYS PL § 400.00 and the *Supremacy Clause*. And would have mandated that Knight must possess a brick & mortar store before applying for a State FDL. Which would unlawfully allow Defendants to prohibit the transportation of inventory to off-site storage in violation of the Commerce Clause. And no FFL 01 could conduct business intrastate at gun shows, or intrastate and/or interstate via mail-order, and/or e-commerce. In violation of 27 C.F.R. § 478.100(a)(1), and NYS PL § 400.00(1)(n). Defendants have yet to present a State Court decision that So Ordered the Defendants to violate the Commerce Clause.

**(17)** **27 C.F.R. § 478.100(a)(1)**

**(a)** A licensee may conduct business temporarily at a gun show or event as defined in paragraph (b) if the *gun show* or event is located in the same State specified on the license: Provided, That such business shall not be conducted from any motorized or towed vehicle. The premises of the gun show or event at which the licensee conducts business shall be considered part of the licensed premises. Accordingly, no separate fee or license is required for the gun show or event locations. However, licensees shall comply with the provisions of § 478.91 relating to posting of licenses (or a copy thereof) while conducting business at the gun show or event.

**(1)**     A licensed importer, manufacturer, or dealer may engage in the business of dealing in curio or relic firearms with another licensee at any location.

**(a)**     A gun show or an event is a function sponsored by any national, state, or local organization, devoted to the collection, competitive use, or other sporting use of firearms, or an organization or association that sponsors functions devoted to the collection, competitive use, or other *sporting use of firearms* in the community.

**(18)**   **NYS PL § 400.00(1)(n)**

**(a)**     concerning whom no good cause exists for the denial of the license. No person shall engage in the business of gunsmith or dealer in firearms unless licensed pursuant to this section. An applicant to engage in such business shall also be a citizen of the United States, more than twenty-one years of age and maintain a place of business in the city or county where the license is issued. For such business, if the applicant is a firm or partnership, each member thereof shall comply with all of the requirements set forth in this subdivision and if the applicant is a corporation, each officer thereof shall so comply.

**51.**     Defendants stated within their Notice of Disapproval After Appeal that irrespective of the fact that Knight possesses an FFL 01. If he travels with firearms for retail sale he is subject to criminal liability. This has caused Knights small business irreparable harm which is an Article III economic injury-in-fact. (Ex 4 - Part B: 19 (A) - ¶ 6)

**(a)**     You state that you travel with firearms for retail sale (Interview Questionnaire, Question 61). Please be advised that since you do not have a gun dealer license issued by the Police Commissioner, you are not authorized to travel with firearms for retail sale in New York City, and doing so may subject you to criminal liability.

**52.**      Insofar as the 3rd party standing for the violations of the 2nd Amendment rights of Knights and/or FFL 01s customers. The 2nd Amendment and NY Civil Rights Law § 4 commands that the right to *keep and bear arms shall not be infringed*. Defendants carry the burden of establishing that 38 R.C.N.Y. and/or NYC Admin. Code are reasonably tailored. The Court(s) below are fully aware that these local ordinances prohibit Knight and/or FFL 01s from lawfully selling firearms in interstate commerce. *See*, <u>*Ezell v. City of Chicago*</u>, 651 F.3d 684, 706 (7th Cir. 2011) (government bears the burden of justifying its action under the heightened standard of judicial review). Defendants were not required to justify any of their actions. (Ex 3 - Part A: 15)

### (19)   <u>Federal Firearms License 01: Denial and Appeal</u>

**53.**      Knight's initial application for an FFL 01 was denied. The ATF stated that Knight did not have a lawful place of business in the City. (Ex 4 - Part B: 20)

**(a)**      Your application for a Federal firearms license (*"FFL"*) as a dealer in firearms other than destructive devices under Title 18, United States Code, Chapter 44, is being denied. This notice explains the basis for the denial.

**(b)**      <u>**Authorization for Denial**</u>:

**(c)**      Pursuant to the provisions of <u>18 USC § 923(d)(1)</u> the Attorney General may deny an application for licensing if:

**(d)**      (E) The applicant does not have in a State (i) premises from which he conducts business subject to license under this chapter or from which he intends to conduct such business within a reasonable period of time; "<u>to wit, you are not licensed by the City of New York to engage in your intended operations pursuant to a FFL at the location identified on your application</u>."

**(e)**      For this reason, you do not meet the minimum requirements for licensing pursuant to <u>18 USC § 923(d)(1)(E)</u> and your application for a license is hereby denied.

54.     Knight requested a hearing where he (1) validated that possession of an FFL 01 is required before any applicant can apply for a State FDL from Defendants. (2) Item (14) of the FFL 01 application, states that an *apartment* is a lawful place of business for an FFL 01. (3) Item (16) of the application asks *"Do you intend to sell firearms at Gun Shows and/or conduct Internet sales?"* The ATF immediately reversed Knight's denial and issued his FFL 01. (Ex 4 - Part C: 21 - p. 2)

55.     Defendants still aver that Knight does not have a lawful place of business and refuse to acknowledge that under 18 U.S.C. § 923(d)(1)(E), NYS PL § 400.00(1)(n), and § 12-10 - NYC Zoning Resolution. Knight has satisfied the place of business requirement. And under 27 C.F.R. § 478.50(a), inventory can be stored at off-site storage locations. Invalidating Defendant's unlawful requirement that Knight and/or FFL 01s can only utilize a brick & mortar store in the City to conduct business. Whereas handguns can be sold at gun shows and via mail-order and/or e-commerce.

**(20)  Canons of Statutory Construction**

56.     If there is more than one interpretation of what defines a place of business in the City under NYS PL § 400.00(1)(n) it can be considered ambiguous. Knight does not conduct retail sales at his place of business he only performs the administrative and/or managerial activities of his business from his home which qualifies as a place of business in the City. The Department of City Planning defines Knight's business as a *home occupation* under § 12-10 - NYC Zoning Resolution. (Ex 4 - Part C: 22)

**(a)**    A <u>home occupation</u> is an accessory use which:

**(1)**    is clearly incidental to or secondary to the residential use of a dwelling unit or rooming unit;

**(b)**    In connection with the operation of a home occupation, it shall not be permitted:

**(1)**    to sell articles produced elsewhere than on the premises;

**(c)**    Home occupations include, but are not limited to:

**(1)**    professional offices

**57.**    § 12-10 - NYC Zoning Resolution allows a *home occupation*, and 27 C.F.R. § 478.50(a) allows inventory to be stored off-site. This conflicts with Defendant's requirement that Knight and/or FFL 01s must possess a brick & mortar store in the City. The IRS also states that a home can be used for Trade or Business Use and/or as a Principal Place of Business for tax purposes. (Ex 4 - Part C: 23 - p. 3)

### (21)   IRS: Business Use or as a Principal Place of Business

**(a)**    A portion of your home may qualify as your principal place of business if you use it for the *administrative or management activities of your trade or business* and have no other fixed location where you conduct substantial administrative or management activities for that trade or business.

### (22)   Third-Party Standing of Customers

**58.**    Cavalier Knight, LLC is a separate legal entity, apart from its members. Defendant's prohibition on Cavalier Knight, LLCs ability to perform work violates the 3rd party standing of Cavalier D. Knight a law-abiding citizen. By prohibiting him from purchasing handguns from his separate business entity Cavalier Knight, LLC. And prohibits Cavalier Knight, LLC from engaging in intrastate and/or interstate commerce with law-abiding citizens. Seeking to purchase the constitutionally protected goods and/or services sold for self-defense by Cavalier Knight, LLC.

59.     Forcing FFL 01s in the City to possess a brick & mortar store. When inventory can be stored off-site and firearms can be sold intrastate at gun shows and interstate via mail-order and/or e-commerce. Violates the Equal Protection Clause of the 14th Amend.; and the Privileges and Immunities Clause of Article IV, Section 2.

**(23)   ATF Shipping Firearms**

**(a)**    What if I only sell firearms at flea markets, gun shows or over the Internet?

**(b)**    A person can be engaged in the business of dealing in firearms regardless of the location in which firearm transactions are conducted. A person can be engaged in the business of dealing in firearms even if the person only conducts firearm transactions from a location other than a traditional brick and mortar store. Many licensed gun dealers conduct business at temporary locations such as qualified gun shows or events, and utilize the internet to facilitate firearm transactions. The question under federal law is not where firearm transactions are conducted, but rather is whether under a totality of the circumstances the person conducting those transactions is engaged in the business of dealing in firearms. The factors listed below apply to that determination regardless of where the firearm transactions occur.

**(c)**    The growth of new communications technologies and e-commerce allows sellers of firearms to advertise to an expansive market at minimal cost, and complete sales with minimal effort. While a collector or hobbyist may use the internet and other communication technology to sell a firearm without a license (provided that they comply with all other federal and state laws and regulations), those engaged in the business of dealing in firearms who utilize the internet or other technologies must obtain a license, just as a traditional dealer whose business is run out of a traditional "brick and mortar" store.

60.     Neither the GCA nor its implementing regulations contain specific provisions, requiring that an FFL have firearms shipped to their licensed business premises when receiving firearms. To that end, an FFL may lawfully receive firearms at their mailing address, storage location, or other address where the licensee intends to ensure safe and secure receipt of the firearms. (Ex 4 - Part C: 24)

61.     Defendants aver that Knight's FFL 01 prohibits him from possessing inventory. 27 C.F.R. § 478.50(a) allows a *separate warehouse solely for the storage of firearms or ammunition.* (Ex 4 - Part C: 25)

62.     Knight's equal protection and/or procedural due process claim is an assertion that he is being treated differently than other FFL 01s because he does not possess a brick & mortar store in the City. And there is no justification for such disparate treatment. The requirement to possess a brick & mortar store to obtain a State FDL and/or State CBL violates his right to equal protection of the law.

63.     Indeed, just like the gun-range ban in *Ezell* prevented Chicagoans from meeting a Chicago Firearms Permit prerequisite of legal gun ownership. Defendants prohibition on Knight's and/or any FFL 01s ability to sell handguns and/or ammunition intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce. Prevents law-abiding citizens from fulfilling, the most fundamental prerequisite of legal gun ownership which is the simple acquisition of handguns for self-defense.

64.     The Supreme Court long ago made it clear that one is not to have the exercise of his or her liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place. In *Ezell I* the city could not defend its regulatory scheme with shoddy data or reasoning. The municipality's evidence must fairly support its rationale for its ordinance. 651 F.3d at 709 (quoting *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438 (2002)). (Ex 3 - Part A: 16)

**65.**   To borrow from the free-speech context, there must be evidence to support the City's rationale for the challenged regulations; *lawyers' talk is insufficient*. *Annex Books, Inc. v. City of Indianapolis*, 581 F.3d 460, 463 (7th Cir. 2009). Here, as in *Ezell I*, the city's defense of the challenged zoning rules rests on sheer speculation about accidents and theft, 651 F.3d at 709. That's not nearly enough to satisfy its burden. (Ex 3 - Part A: 17)

**(24)**   **Article III Economic Injury-In-Fact**

**66.**   Inventory can be transported to off-site storage locations and sold intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce. Without the excessive overhead required to maintain a brick & mortar store in the City. Defendants are aware that leasing a commercial brick & mortar store in the City is cost-prohibitive. And this is used to discourage FFL 01s from establishing this type of business in the City. Defendants are acting in the capacity of the state legislature by regulating FFL 01s out of business in the City. (Ex 4 - Part C: 26)

**(25)**   **ATF: Intent to Sell Firearms**

**(a)**   ATF has indicated a license can be issued for persons whose intent is to sell firearms <u>primarily at gun shows, the internet, or by mail</u>. To qualify for a license, must applicants also sell firearms from their premises?

**(b)**   **NO.** The February 17, 2017 correspondence simply recognizes that <u>ATF does not issue different classes or categories of 01 licenses</u> to persons based upon which or how many of the options for conducting business an applicant intends to exercise at the time the application is filed.

**(c)**   Once issued, a dealer's license allows the licensee to sell firearms by any means or from any location otherwise permitted by law regardless of their intent at the time of application.

67.     Since Knight and/or FFL 01s are required to transport inventory this substantiates *a special need for self-protection distinguishable from that of the general community*. Knight brings an Equal Protection claim under the Equal Protection Clause of the 14th Amendment. Which mandates that all similarly situated individuals be treated alike. *See*, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, Courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. *See*, *Artec Constr. & Dev. Corp. v. NYC Dep't of Hous. Pres. & Dev.*, No. 15 Civ. 9494 (KPF), 2017 WL 782911, at *2 (S.D.N.Y. Feb. 27, 2017) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)). (Ex 3 - Part A: 18, 19, 20)

> **(a)**     An individual may assert either a class of one or selective enforcement equal protection claim. An individual does not need to identify as a member of a class or a group to be entitled to equal protection. For an equal protection clause analysis, a class can consist of a single member. This class-of-one doctrine protects individuals from wholly arbitrary acts of state governments. To qualify for class-of-one equal protection, an individual must first show that he or she was treated differently from similarly situated persons and that the different treatment was intentional and had no rational basis. Then, the individual must show that this differential treatment flows from an illegitimate animus, rather than from coincidence, chance, or a permissible governmental classification. Furthermore, an individual is only entitled to a class-of-one equal protection doctrine if he was intentionally singled out because of his membership in the class.

68.      To proceed under this theory, Knight must show an extremely high degree of similarity between [himself] and [other] FFL 01s. *See*, *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012). As the Second Circuit recently clarified in *Hu v. City of New York*, No. 18-737 (2d Cir. 2019). (Ex 3 - Part B: 21, 22)

69.      Knight has established that all FFL 01s are *prima facie* identical. By showing that (1) no rational person could regard the circumstances of Knight to differ from those of another FFL 01 to a degree that would justify the differential treatment based on a legitimate government policy; and (2) the similarity in circumstances and difference in treatment is sufficient to exclude the possibility that Defendants acted based on a mistake. Post - *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) a complaint must make sufficient factual allegations in support of this similarity requirement to survive a motion to dismiss an equal protection claim. *See*, *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). (Ex 3 - Part B: 23, 24)

   (a)   Courts require more than a bare allegation that other individuals were treated differently. *See*, *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 435 (S.D.N.Y. 2013). (Ex 3 - Part B: 25)

70.      Defendants refuse to issue Knight a State FDL because he does not possess a brick & mortar store in the City. The Equal Protection Clause of the 14th Amendment prohibits a state from denying its residents equal protection under the law. It prohibits a state from classifying people in a way that restrains fundamental rights such as the right to engage in interstate commerce under the Privileges and Immunities Clause, without meeting heightened scrutiny. *See*, *Hussey v. City of Portland*, 64 F.3d 1260, 1265 (9th Cir. 1995). (Ex 3 - Part B: 26)

**(b)** Discrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys., Inc. v. Department of Envtl. Quality*, 511 U.S. 93, 99 (1994). (Ex 3 - Part B: 27)

## 3)   Statement of Facts

### (26)   (2013) 1st State CBL Application Denial

**71.**   On November 06, 2013, Knight submitted his first application for a State CBL. On February 11, 2014, he was interviewed by P.O. Richard Ochetal and his supervisor Associate Investigator Michelle Gilliam. Knight received a Notice of Disapproval letter dated June 13, 2014. (Ex 4 - Part B: 18)

### (27)   State CBL Appeal of Application Disapproval

**72.**   Knight enlisted attorney John S. Chambers to submit an Appeal of Application Disapproval dated July 16, 2014. Knight received a Notice of Disapproval After Appeal letter dated October 07, 2014, stating that *selling body armor* did not satisfy *proper cause* to receive a State CBL. (Ex 4 - Part B: 18 (A))

**(a)** You have alleged that you require a firearm for business purposes. A careful review of your application and your attorney's appeal brief fails to convince me that you require a Carry Business license to conduct your business as a sales associate for Armored Mobility Inc. (AMI).

### (28)   State CBL Article 78 - 101556/2014 - Petition

**73.**   Attorney John S. Chambers refused to file an Article 78 and immediately ended his attorney-client relationship with Knight. On December 26, 2014, Knight filed Article 78 - 101556/2014. The Petition was dismissed on June 11, 2015. (Ex 4 - Part B: 18 (B))

**(29)**   **State CBL Article 78 - 101556/2014 - Dismissed**

**74.**   Knight could not constitutionally challenge 38 R.C.N.Y. and/or NYC Admin. Code within Article 78 - 101556/2014. The 2nd Amendment, Commerce Clause, and Article III economic injury-in-fact issues that exist in the current (2017) denial did not exist within the (2014) denial. Denial (1 - 2014) was for body armor and denial (2 - 2017) was for firearm sales which violates the 2nd Amendment.

**(30)**   **NYPD License Division: Systemic Corruption**

**75.**   During the investigation of Knight's (2014) State CBL application. Knight's investigator P.O. Richard Ochetal was accepting bribes to issue State CBLs in collusion with attorney John S. Chambers which was a *conflict of interest*. (Ex 5)

> **(a)**   From in or about (2013), up to and including in or about (2016), in the Southern District of New York and elsewhere, PO Richard Ochetal, the defendant, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the U.S., to wit, to commit bribery, in violation of Title 18 U.S.C. § 666.

**76.**   Defendants illegally issued 100+ State CBLs to *criminals* who lacked *proper cause* putting 100+ illegally owned firearms on the streets of the City. However when Knight an African-American small business owner who possesses an FFL 01 lawfully applied for a State CBL. Defendants *arbitrarily* denied Knight's State CBL application. Irrespective of the fact that Defendants require Knight to possess a State CBL to conduct business. This *de facto* prohibited Knight from engaging in interstate commerce. Striking at the core of the 2nd Amendment right of all law-abiding citizens who cannot acquire handguns for self-defense from Knight and/or FFL 01s within the City. *See*, <u>Adams Express v. New York</u>, 232 U.S. 14 (1914). (Ex 3 - Part B: 28)

**(31)    NYPD: Admits Violating Commerce Clause I**

**77.**    Knight has two letters from Defendants that acknowledge that they are aware that 38 R.C.N.Y. and/or NYC Admin. Code violates the Commerce Clause. Knight received a letter from Thomas M. Prasso the former Director of the NYPD License Division dated October 27, 2015.

**78.**    This letter stated that NYC Admin. Code § 10-302 only allows firearms sales "to be conducted in person at a physical location that can be identified by street and number with a certificate of occupancy which allows a firearms dealer to operate at the location." Which prohibits Knight and/or FFL 01s from selling handguns and/or ammunition intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce in violation of the Commerce Clause. (Ex 4 - Part C: 27)

> **(a)**    *You are correct that the application for a gun dealer license does not contain provisions for dealers conducting internet sales of firearms.* New York City Administrative Code section 10-302 requires that all firearms sales be conducted in person at a physical location that can be identified by street and number. The license must mention and describe the premises for which it is issued. The license is only valid for that location and must be prominently displayed therein. In addition, the premises must possess a certificate of occupancy which allows a firearms dealer to operate at the location.

**79.**    Defendants claim that NYC Admin. Code § 10-302 only allows FFL 01s to sell firearms intrastate to residents of the City in person from a brick & mortar store. While prohibiting all sales intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce which *facially* violates the Commerce Clause and *as-applied* to Knight and/or FFL 01s in the City. *See*, <u>Homier Distrib. Co. v. Albany</u>, 90 N.Y.2d 153 (1997) (Ex 3 - Part B: 29)

80.    NYS PL § 400.00(1)(n) does not require Knight and/or FFL 01s to possess a brick & mortar store to apply for Defendant's fictitious NYC Gun Dealer License. There is no such thing as an NYC Gun Dealer License. There is only a State FDL issued on behalf of the State by the NYPD Police Commissioner as the Statutorily Designated Handgun Licensing Officer in the City. (Ex 4 - Part B: 17)

**(32)    State Firearm Dealer's License Application**

81.    The state PPB-6: Application for License as Gunsmith - Dealer in Firearms in (57) counties of the State of New York consists of a (2) page document. Defendant's application for the same license is (16) pages. And unlawfully mandates that all FFL 01s must possess a brick & mortar store in the City. Before they can apply for a State FDL to conduct business in the City. The requirement that FFL 01s must mandatorily possess a brick & mortar store does not exist within the other (57) counties in the State. Because it's preempted by 18 U.S.C. § 923(d)(1)(E) and/or NYS PL § 400.00(1)(n). (Ex 4 - Part C: 28, 29)

82.    The First Amendment protects both book buyers and booksellers. Does the Second Amendment protect only people who buy guns, or does it also protect people who sell guns? Though this question has divided the federal courts, the answer is quite clear: operating a business that provides Second Amendment services is protected by the Second Amendment. *Heller* teaches that regulation of how firearms are commercially sold enjoys a presumption of constitutionality, which does not extend to prohibitions of firearms sales. See, *Does the Second Amendment Protect Firearms Commerce*? David B. Kopel. (Ex 4 - Part C: 30)

83.    Defendant's State FDL application should be uniform with the PPB-6 application issued within the other (57) counties in the State. In support of the NYS Legislatures' intent to preempt the field of firearms regulation under NYS PL § 400.00(1)(n). *See*, *Chwick v. Mulvey*, NY Slip Op 09911 (2010). (Ex 3 - Part A: 07)

84.    The Supreme Court has long held that the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the state's borders, *Healy v. Beer Inst., Inc*., 491 U.S. 324, 336 (1989), and imposes strict limitations on states power to discriminate against interstate commerce, *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992). These restrictions apply to states and political subdivisions alike. *Maine v. Taylor*, 477 U.S. 131, 151 (1986). There is no doubt that Defendant's prohibition implicates commerce, both inside and outside of the City. By completely prohibiting interstate commerce outside of the City and/or State. And it is long settled that the prohibition of interstate commerce is a form of regulation. *See, Champion v. Ames* (*Lottery Case*), 188 U.S. 321 (1903). (Ex 3 - Part B: 30, 31, 32, 33)

## 4)    **NYPD: Admits Violating Commerce Clause II**

85.    Knight also received an additional letter from Jonathan David Director of the NYPD License Division dated January 25, 2017. Stating that 38 R.C.N.Y. prohibits Knight and/or FFL 01s from selling their constitutionally protected goods and/or services intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce. (Ex 4 - Part C: 31)

86.     Defendants stated that 38 R.C.N.Y. prohibits Knight and/or FFL 01s from selling handguns at sporting arms events. Under 27 C.F.R. § 478.100(a)(1) and NYS PL § 400.00(8) all gun shows are sporting arms events. If there are no provisions permitting Knight and/or FFL 01s to sell firearms at sporting arms events under 38 R.C.N.Y.  This local rule is preempted by 27 C.F.R. § 478.100(a)(1) and/or NYS PL § 400.00(8) which allows FFL 01s to engage in interstate commerce at gun shows.

**(33)   NYS PL § 400.00(8)**

**(a)**     A gunsmith or dealer of firearms may conduct business temporarily at a location other than the location specified on the license if such temporary location is the location for a gun show or event sponsored by any national, state, or local organization, or any affiliate of any such organization devoted to the collection, competitive use or other sporting use of firearms.

87.     And 27 C.F.R. § 478.50(a) allows Knight and/or FFL 01s to utilize off-site storage locations of inventory. And 38 R.C.N.Y. § 4-03(k) indicates that inventory can be stored at branch units in the City. (Ex 4 - Part B: 15)

**(34)   38 R.C.N.Y. § 4-03(k)**

**(a)**     If applicant has any *branch units* in the City of New York where any firearms, rifles, shotguns, machine-guns, assault weapons, air pistols, or air rifles are stored or any activities requiring a license are conducted, a separate application shall be filed with the precinct where each *branch* is located and a separate license secured for each premises.

88.     The conditions to apply for a State FDL under 38 R.C.N.Y. § 4-03 (t) (1), (3), (4), and (5), violate the *Supremacy Clause*. Defendants have ignored Knight's written requests for an amended State FDL application. That is equally applicable to Knight and all FFL 01s who intend to sell handguns in interstate commerce at gun shows and via mail-order and/or e-commerce under NYS PL § 400.00(1)(n).

89.     Director David stated, "your FFL license does not automatically entitle you to a Carry License from the NYPD License Division for transporting weapons or any other purpose." However, this contradicts Defendant's requirement that Knight and/or FFL 01s must possess a State CBL to handle inventory. (Ex 4 - Part B: 11)

90.     38 R.C.N.Y. and/or NYC Admin. Code discriminates against interstate commerce in favor of local businesses. It allows FFL 01s with a brick & mortar store in the City to only sell firearms from their physical store location. But prohibits Knight and all FFL 01s from selling any firearms intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce.

91.     Defendants have not been required to show that this *de-facto* ban satisfies any level of scrutiny. Nor have they provided any proof that they are advancing any interest of which no other means exists to do so, *see, C & A Carbone, Inc. v. Clarkstown,* 511 U.S. 383 (1994), 511 US at 392. *See, Granholm v. Heald*, 544 U.S. 460, 473 (2005). This ban is thus *per se* invalid. (Ex 3 - Part B: 34, 35)

92.     Prohibitions on interstate commerce could not survive any level of scrutiny. Once the Court determines discrimination against interstate commerce, it must then determine whether the law advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.

93.     If it does, then the law is constitutional; if not, the law is void. Importantly, this test is a high hurdle to clear. ***It is so rarely overcome that the Court frequently refers to it as a virtually per se rule of invalidity***.

94.     Respondent's denial is duplicative of _New York State Rifle & Pistol Association Inc. v. City of New York_, No. 18-280 (2020). For (7) years Defendants fought to prohibit the transportation of firearms out of the City citing public safety concerns. On January 22, 2019, the U.S. Supreme Court granted Certiorari, and Defendant's moved to amend their rule. Why did they voluntarily walk back their firearms transport rule if doing so would threaten public safety? If changing this rule did not impact public safety, why did the rule exist in the first place? They recognized that SCOTUS likely would not agree to hear the _NYSRPA_ case if they did not intend to reverse New York City's draconian firearms transport rule. (Ex 3 - Part B: 36)

95.     Defendants cannot prohibit residents of the City from transporting their firearms outside of the City. Nor can they prohibit Knight and/or FFL 01s from receiving inventory and transporting their inventory to gun shows and/or off-site storage locations outside of the City. Nor prohibit Knight and/or FFL 01s from selling their constitutionally protected goods and/or services intrastate and/or interstate via mail-order and/or e-commerce to law-abiding citizens outside of the City. This _facially_ violates the Commerce Clause and _as-applied_ to Knight and/or FFL 01s in the City.

**(35)   Federal Preemption**

**(a)     Montana Firearms Freedom Act:** The passage of the Montana Firearms Freedom Act, Montana House Bill 246 ("Act"), effective October 1, 2009, has generated questions from industry members as to how this State law may affect them while engaged in a firearms business activity. The Act purports to exempt personal firearms, firearms accessories, and ammunition manufactured in the State, and which remain in the State, from most Federal firearms laws and regulations. _However, because the Act conflicts with Federal firearms laws and regulations, Federal law supersedes the Act, and all provisions of the Gun Control Act and the National Firearms Act, and their corresponding regulations, continue to apply._

**(b)** __Tennessee Firearms Freedom Act:__ The passage of the Tennessee Firearms Freedom Act, H.B. 1796, 106th Leg. (Tenn. 2009) 1796 ("Act"), effective June 19, 2009, has generated questions from industry members as to how this State law may affect them while engaged in a firearms business activity. The Act purports to exempt personal firearms, firearms accessories, and ammunition manufactured in the State, and which remain in the State, from most Federal firearms laws and regulations. *However, because the Act conflicts with Federal firearms laws and regulations, Federal law supersedes the Act, and all provisions of the Gun Control Act and the National Firearms Act, and their corresponding regulations, continue to apply.*

**(c)** __Kansas Second Amendment Protection Act:__ The passage of the Kansas Second Amendment Protection Act, Kansas Senate Bill No. 102 (Kan. Reg. Vol. 32, No. 17, 2013) ("Act"), effective April 25, 2013, has generated questions from industry members and firearm owners as to how this State law may affect them while engaged in a firearms business activity or seeking to acquire a firearm under the Act. The Act exempts personal firearms, firearms accessories, and ammunition manufactured in the State of Kansas, and that remain in the State of Kansas, from Federal firearms laws and regulations. *However, Federal law supersedes the Act, including in any areas in which the Act conflicts with Federal firearms laws and regulations. Accordingly, all provisions of the Gun Control Act and the National Firearms Act, and their corresponding regulations, continue to apply.*

96. The U.S. Department of Justice has stated that when there is a conflict between federal firearm laws all provisions of the Gun Control Act and the National Firearms Act, and their corresponding regulations, continue to apply. Therefore the City cannot bypass federal firearms regulations to prohibit Knight and/or FFL 01s. From selling their constitutionally protected goods and or services to law-abiding citizens intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce. The NYS Legislature cannot supersede federal firearms laws but the Court(s) below allowed the City to violate them with impunity. (Ex 4 - Part C: 32)

97.     By purporting to nullify federal law, 38 R.C.N.Y. and/or NYC Admin. Code violates the *Supremacy Clause* of the United States Constitution.  See U.S. Const., art. VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); *see United States v. Reynolds*, 235 U.S. 133, 149 (1914) ("If such state statutes . . . have the effect . . . to nullify statutes passed in pursuance [to the Federal Constitution], they must fail.").

98.     As the U.S. Supreme Court has made clear on many occasions, state legislatures have no authority to invalidate federal statutes or to disregard federal law. *See*, e.g., *Cooper v. Aaron*, 358 U.S. 1, 18–19 (1958) (reaffirming the "basic principle that the federal judiciary," not an individual State, "is supreme in the exposition of the law of the Constitution"); *United States v. Reynolds*, 235 U.S. 133, 149 (1914) ("If such state statutes . . . have the effect to deny rights secured by the Federal Constitution or to nullify statutes passed in pursuance thereto, they must fail."); *Anderson v. Carkins*, 135 U.S. 483, 490 (1890) ("The law of congress is paramount; it cannot be nullified by direct act of any state, nor the scope and effect of its provisions set at naught indirectly."); *Ableman v. Booth*, 62 U.S. (21 How.) 506, 523–26 (1858); *United States v. Peters*, 9 U.S. (5 Cranch) 115, 136 (1809). (Ex 3 - Part B: 37, 38, 39, 40) and (Ex 3 - Part C: 41)

**(a)**　Additionally, under the doctrine of preemption, state law is invalid to the extent it conflicts with federal law. <u>Arizona v. United States</u>, 567 U.S. 387, 399 (2012) (conflict preemption includes both "cases where compliance with both federal and state regulations is a physical impossibility and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"). (Ex 3 - Part C: 42)

**99.**　Knights business is one with primary goods that directly involve the 2nd Amendment to the U.S. Constitution. Defendants have superseded the authority of Congress to regulate interstate commerce in the City in violation of the *Supremacy Clause.*

**100.**　38 § 5-03 states that in addition to the requirements in § 5-02, an applicant seeking a carry or special handgun license shall be required to show *proper cause* pursuant to § 400.00(2)(f) of the NYS PL. *Proper cause* is determined by a review of all relevant information bearing on the claimed need of the applicant for the license. The following are examples of factors which shall be considered. (Ex 4 - Part C: 33)

**(36)**　<u>38 R.C.N.Y. § 5-03</u>

**(a)**　Exposure of the applicant by reason of employment or business necessity to *extraordinary personal danger requiring authorization to carry a handgun.*

**(b)**　Example: Employment in a position in which the applicant routinely engages in transactions involving substantial amounts of cash, jewelry or other valuables or negotiable items. In these instances, the applicant shall furnish documentary proof that her/his employment actually requires that s/he be authorized to carry a handgun, and that s/he routinely engages in such transactions.

**101.**   Under NYS PL § 10.00(12)(13) when used with criminal intent handguns are considered deadly weapons and/or dangerous instruments.

**(37)**   **NYS PL § 10.00 - Definitions**

**(a)**   **12.** Deadly weapon means any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged, or a switchblade knife, gravity knife, pilum ballistic knife, metal knuckle knife, dagger, billy, blackjack, plastic knuckles, or metal knuckles.

**(b)**   **13.** Dangerous instrument means any instrument, article or substance, including a vehicle as that term is defined in this section, which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury. (Ex 4 - Part C: 34)

**102.**   Knight possesses an FFL 01 and Class 3 Special Occupation Tax Stamp (SOT). Which allows him to buy and sell, shotguns and rifles having barrels less than (18) inches in length, certain firearms described as any other weapons, machine guns, and firearm mufflers and silencers. Why would Defendants need to determine on a case by case basis if FFL 01s have proper cause to be authorized to carry a handgun?

**103.**   Knight and/or FFL 01s can transport an inventory of potentially *deadly weapons and/or dangerous instruments* to gun shows and/or off-site storage locations. All FFL 01s engage in transactions involving substantial amounts of cash, and valuables e.g., handguns and/or ammunition. Because of Knight's employment as an FFL 01, he is exposed to extraordinary personal danger requiring authorization to carry a handgun. However, Defendants aver that Knight's possession of an FFL 01 is not documentary proof that his employment requires that he be authorized to carry a handgun simply because he can routinely engage in such transactions consisting of transporting handguns and/or ammunition throughout the State.

**104.**   Defendants aver that under 38 R.C.N.Y. § 5-03(a)(b) that irrespective of the fact that Knight and/or FFL 01s can transport potentially *deadly weapons and/or dangerous instruments* under NYS PL § 10.00(12)(13). To off-site storage locations and/or gun shows under NYS PL § 400.00(8). They are not exposed *"by reason of employment or business necessity, to any extraordinary personal danger requiring authorization to carry a handgun"* under NYS PL § 400.00(2)(f).

**105.**   Defendants require FFL 01s to possess a State CBL to handle inventory, and the State requires FFL 01s to possess a State FDL to sell handguns and/or ammunition. All-City FFL 01s can transport potentially *deadly weapons and/or dangerous instruments* throughout the State without police escort. Why are Defendants prohibiting Knight an African American small business owner from receiving the State CBL and/or FDL that the City and/or State require Knight and/or FFL 01s to possess to conduct business in interstate commerce?

>   **(a)**   A government and its agents are under no general duty to provide public services, such as police protection, to any particular individual citizen. The duty to provide public services is owed to the public at large, and, absent a special relationship between the police and an individual, *no specific legal duty exists*; *See*, <u>Warren v. District of Columbia</u>, (444 A.2d. 1, D.C. Ct. of Ap. 1981). (Ex 3 - Part C: 43)

**106.**   Defendants aver that Knight did not present any documentation of recurrent threats, or any threats, to his life or safety. Cavalier Knight, LLC is a partner of NYPD Operation Nexus. If Knight and/or FFL 01s "by reason of their employment or business necessity, are not exposed to any extraordinary personal danger requiring authorization to carry a handgun in the City."

**107.** Why has NYPD Operation Nexus stated that terrorists may attempt to appropriate the inventory of Knight and/or FFL 01s? Knight submitted this documentation from NYPD Operation Nexus with his State CBL application. Defendants are ignoring the dangers indicated by NYPD Operation Nexus their Counter-Terrorism department. NYPD Operation NEXUS has verified potential dangers faced by Knight and/or FFL 01s in the City. (Ex 4 - Part C: 35)

**(38) Operation Nexus - NYPD Shield**

**(a)** The New York City Police Department's Operation Nexus is a nationwide network of businesses and enterprises joined in an effort to prevent another terrorist attack against our citizens. Our detectives have conducted over 25,000 visits to firms that have joined us in this mutual effort. Members of Operation Nexus are committed to reporting suspicious business encounters that they believe may have possible links to terrorism.

**(b)** The NYPD believes terrorists may portray themselves as legitimate customers in order to purchase or lease certain materials or equipment, or to undergo certain formalized training to acquire important skills or licenses. *There is also a concern that these individuals may simply steal certain types of vehicles, equipment or materials from the inventory of legitimate businesses.* Whatever the method, once appropriated these items could then be used to facilitate a terrorist plot.

**(c)** Terrorist attacks do not occur in a vacuum. They require planning and preparation, such as the acquisition of certain materials or training in targeted activities. *Terrorist operatives will try to obtain these in the private sector, from businesses both inside and outside of New York City's geographic boundaries.* Moreover, their approach to a business will vary, from entering a store and standing directly in front of a customer-service counter *to making an electronic purchase over the Internet at a company's website.*

**108.** NYPD Operation Nexus provided documentary proof that FFL 01s conduct business that requires routinely engaging in transactions that expose them to extraordinary personal danger. From individuals who may simply attempt to steal the inventory from Knight and/or FFL 01s legitimate businesses. Knight previously submitted information to NYPD Operation Nexus about calls from individuals possibly attempting to illegally straw purchase Barrett M107A1 50 BMG rifles.



**Barrett M107A1 50 BMG**

### 5)   Protection For Businesses Providing Related Services

**109.** The doctrine of standing _Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc._, 528 U.S. 167, 180, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). The minimal constitutional mandate for Article III standing must show (1) an injury-in-fact, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury will likely be redressed by a favorable decision. _Lujan v. Defenders of Wildlife_, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). (Ex 3 - Part C: 44, 45)

**110.** The economic injury caused by 38 R.C.N.Y. and/or NYC Admin. Code is sufficient for standing for Knight to challenge those statutes. *See*, <u>Nat'l Audubon Society v. Davis</u>, 144 F. Supp. 2d 1160 (N.D. Cal. 2000), 307 F.3d 835, 855-56, opinion amended in other respects on denial of reh'g, 312 F.3d 416 (9th Cir. 2002). In <u>Davis</u>, for example, plaintiff animal trappers challenged a law prohibiting the use of certain types of traps. 307 F.3d at 842. (Ex 3 - Part C: 46)

> **(a)** The trappers alleged that they earned a living through trapping, had ceased trapping because of the law, would continue trapping if the law were declared invalid, and asked for declaratory and injunctive relief. *Id*. At 845, 855-56. The Court concluded that the trappers had standing to challenge the law, noting that the trappers economic injury is directly traceable to the fact that [the challenged law] explicitly forbids the trapping they would otherwise do *Id*. at 856.

> **(b)** [The] irreducible constitutional minimum of standing requires a showing of an economic injury-in-fact that is fairly traceable to the challenged action and likely [to] be redressed by a favorable decision. <u>Braden v. Wal-Mart Stores, Inc</u>., 588 F.3d 585, 591 (8th Cir. 2009) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)). "<u>A law that is facially discriminatory or has discriminatory effects is unconstitutional whether or not it also was the product of a discriminatory purpose</u>." *See, <u>United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.</u>*, 550 U.S. 330, 338 (2007). There is simply no denying that Defendant's regime is discriminatory *facially* and *as-applied* to Knight and/or FFL 01s. (Ex 3 - Part C: 47, 48)

**111.** In the 1st Amendment context, [l]iberty of circulating is as essential to [freedom of expression] as liberty of publishing; indeed, without the circulation, the publication would be of little value. *See*, <u>City of Lakewood v. Plain Dealer Pub. Co</u>., 486 U.S. 750, 768 (1988) (citing Ex parte <u>Jackson</u>, 96 U.S. 727, 733 (1878)); *see*, also <u>Lovell v. City of Griffin, Ga</u>., 303 U.S. 444, 452 (1938). (Ex 3 - Part C: 49, 50, 51)

**112.**   In _Carey v. Population Services International_, 431 U.S. 678, 684-88 (1977), the Supreme Court struck down a New York statute forbidding distribution of non-prescription contraceptives through anyone but a licensed pharmacist as unconstitutional, noting that a total prohibition against sale of contraceptives could have an even more devastating effect upon the right to choose to beget a child than a direct ban on contraceptives itself would. (Ex 3 - Part C: 52)

**113.**   The Fifth Circuit struck down a Texas statute prohibiting the promotion or sale of sexual devices because restricting the ability to purchase an item is tantamount to restricting that item's use. _Reliable Consultants, Inc. v. Earle_, 517 F.3d 738, 740, 743 (5th Cir. 2008). (Ex 3 - Part C: 53)

**114.**   An Eighth Circuit case found an ordinance restricting the sale of contraceptives and prophylactics was an unconstitutional burden on the right to contraception choice. _See_, _Postscript Enters., Inc. v. Whaley_, 658 F.2d 1249, 1252-53 (8th Cir. 1981). (Ex 3 - Part C: 54)

**115.**   But as with other protected rights, the 2nd Amendment right becomes meaningless. If Defendants can simply prohibit law-abiding citizens from exercising that right by preventing Knight and/or FFL 01s from selling constitutionally protected goods and/or services in interstate commerce. Unless the conduct at issue is not protected by the 2nd Amendment, Defendants bear the burden of justifying the constitutional validity of 38 R.C.N.Y. and/or NYC Admin. Code. Which imposes a burden on interstate commerce by prohibiting law-abiding citizens from purchasing handguns (i.e. conduct falling within the scope of the 2nd Amendment's guarantee).

116.    Knight's assertion of a right to conduct business is a legally cognizable one. *See, Hampton v. Mow Sun Wong*, 426 U.S. 88, 102 n. 23 (1976). Knight's injuries are concrete and particularized because of 38 R.C.N.Y. and/or NYC Admin. Code which makes it impossible for Knight and/or FFL 01s to conduct business, with any law-abiding citizens affecting them in a personal and individual way. *Lujan*, 504 U.S. at 560 n.1. (Ex 3 - Part C: 55)

117.    Imagine that, to enforce state anti-obscenity laws, Congress outlawed the interstate sale of books. No Court would uphold such a law. Laws that impose broad, categorical bans rather than narrow, precise restrictions are by definition not narrowly tailored. And that is whether the government bans books or firearms. *See*, e.g., *Sable Commc's of Cal., Inc. v. FCC*, 492 U.S. 115, 128 (1989) ("The federal parties argue that the total ban on indecent commercial telephone communications is justified because nothing less could prevent children from gaining access to such messages. We find the argument quite unpersuasive;") *Id*. at 131 (describing the ban as "another case of 'burn[ing] the house to roast the pig'") (quoting *Butler v. Michigan*, 352 U.S. 380, 383 (1957)). (Ex 3 - Part C: 56, 57)

### (39)    3rd Party Constitutional Rights of Gun Stores Customers

118.    Supreme Court precedent dictates that gun stores may assert the 3rd Party constitutional rights of their customers. The cited foundational modern case for this rule is, *Craig v. Boren*, 429 U.S. 190 (1976) (liquor stores may assert equal protection rights of their customers, against state law which set different legal ages for alcohol purchases, based on the sex of the customer). (Ex 3 - Part C: 58)

**119.**   The doctrine dates back at least to *Pierce v. Society of Sisters*, 268 U.S. 510 (1925) (operators of religious schools may assert the 14th Amendment rights of their customers to guide their children's education; ban on all non-government K-12 schools held invalid). Knight in any event independently has established third-party standing. He suffers injury in fact since the challenged statutory provisions are addressed to FFL 01s like Knight, who either must obey the statutory provisions and incur economic injury or disobey the statute and suffer sanctions. In such circumstances, vendors may resist efforts to restrict their operations by advocating the rights of third parties seeking access to their market. *See*, e.g., *Eisenstadt v. Baird*, 405 U. S. 438. Pp. 429 U. S. 194-197. (Ex 3 - Part C: 59, 60)

**(40)   (2017) 2nd State CBL Application Denial**

**(a)     Carry Business License:** This license permits the carrying of a handgun concealed on the person. It is valid for the business name, address, and handguns listed on the license. It is not transferable to any other person, business, occupation, or address, without the written approval of the License Division's Commanding Officer. *This license may also be issued for safety reasons unrelated to business.* **NYPD License and Permit Types**

**120.**   On June 16, 2017, Knight submitted his second State CBL application. Knight received a Notice of Disapproval letter dated December 13, 2017, which stated that he failed to submit a State FDL with his application. (Ex 4 - Part B: 19)

**(41)   (2017) State CBL Reasons For Denial**

**(a)** As a Federal Firearms License Dealer-01, under federal law, you state you can attend gun shows, sporting arm events and utilize off-site storage of firearms, but there are no gun shows, events or storage in New York City. *However, you failed to submit the required documentation to conduct business as a Gun dealer as indicated in Title 38 of the Rules of the City of New York, Section 4-03*;

**(b)**    you state your travel with firearms for retail sale and as an Armor Dealer, you travel with items that put you in personal danger. *However, you failed to provide any documentation of recurrent threats, or any threats, to your life or safety while traveling to and from your place of business, and you have not demonstrated that you have a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession.*

**(42)**   **Procedural Due Process Violations**

**121.**    Knight's State CBL application was denied for failing to submit a State FDL. Within a letter dated 11.19.2017 Defendants did request additional documentation from Knight during the investigation of his State CBL application. They never requested a State FDL or informed Knight that he failed to submit a State FDL before denying his State CBL application. NYPD License Division procedure mandates that applicants must be informed of any missing documentation in writing before disapproval of their State CBL application. All letters requesting additional documentation from applicants must also be submitted to a supervisor for confirmation that the applicants were contacted. How could Defendants purposely fail to inform Knight of this and then use their omission as the reason to deny his application? Depriving Knight of any Procedural Due Process to correct this. Under Revisions to 38 R.C.N.Y., all applicants must be informed of any missing documentation before disapproval of their State CBL application. (Ex 4 - Part C: 36)

**(a)**    Entry between 8-week and 10-week marks <u>identifying outstanding documents or information</u> and detailing communication of same to Applicant (Attach relevant documents, such as letter(s) to Applicant)

**(b)**    10-week review (Entry by I/O indicating case provided to Supervisor at 10-week mark) (<u>Entry by Supervisor verifying review of I/O's entry identifying outstanding documents or information and communication of same to Applicant</u>)

**122.** This conflicts with Defendant's application for a State FDL which states that all "Handgun License(s) For Any And All Applicants Applying For And/Or Working For The Business" e.g. State CBL must be submitted with the application for a State FDL. So how could Knight fail to submit a State FDL with his State CBL application? Knight would have to first possess a State CBL before he could apply for the State FDL. So that he could submit the State CBL e.g. Carry Business Handgun License with the State FDL application as indicated within the State FDL application under Plans and Permits. (Ex 4 - Part C: 29)

**123.** Defendants also aver that Knight could not challenge the reason for his State CBL denial because he never applied for the State FDL. *See*, *Dennis v. Higgins*, 498 U.S. 439 (1991). (Ex 3 - Part D: 61)

**124.** We recognize that a litigant's failure to apply for a license may at times render his challenge to a licensing scheme unripe for judicial review. *See*, e.g., *Pacific Gas Elec. Co. v. State Energy Resources Conservation Dev. Comm'n*, 461 U.S. 190, 200-03 (1983). (Ex 3 - Part D: 62)

**125.** In many cases, requiring litigants to apply for a license before challenging a licensing scheme prevent[s] courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *Id.* at 200 (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 148-49 (1967)). (Ex 3 - Part D: 63)

**126.** Litigants are not required to make such futile gestures to establish ripeness. *Hailes v. United Air Lines*, 464 F.2d 1006, 1008 (5th Cir. 1972); *Image Carrier Corp. v. Beame*, 567 F.2d 1197, 1201-02 (2d Cir. 1977), cert. denied, 440 U.S. 979 (1979); *see*, also *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977). (Ex 3 - Part D: 64, 65, 66)

**127.** ("If an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs,") compare *Newark Branch, NAACP v. Harrison*, 907 F.2d 1408, 1415 (3d Cir. 1990) (plaintiff organization's members have no standing to challenge discriminatory employment practice because there was no indication that any of the members was deterred by the practice from applying for a job). (Ex 3 - Part D: 67)

**128.** In the case at bar, there is no option for Knight and/or FFL 01s to apply for a State FDL before possessing a brick & mortar store in the City. Recognizing there is no clear line separating the category of state regulation that is virtually *per se* invalid under the Commerce Clause, and the category subject to the Pike [test], the Supreme Court has said, the critical consideration is the overall effect of the statute on both local and interstate activity, *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth*, 476 U.S. 573, 579 (1986). (Ex 3 - Part D: 68)

**(43)**   [42 U.S.C. § 1981: The Civil Rights Act of 1866](#)

**(a)**   *Includes the right to make contracts*, to own property, to sue in court, and enjoy the full protection of federal law. In the superseding opinion, reconsidering the Court's approach to the causation standard for § 1981 claims under *Metoyer v. Chassman*, 504 F.3d 919 (9th Cir. 2007), following the Supreme Court's decisions in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), and *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013), the panel held that a plaintiff need not plead that racial discrimination was the but-for cause of a defendant's conduct, but only that racial discrimination was a factor in the decision not to contract such that the plaintiff was denied the same right as a white citizen. (Ex 3 - Part D: 69, 70, 71)

**(44)**   **(2019) Article 78 - 101449/2019: Mandamus to Compel**

**129.**   After receiving a Notice of Disapproval Knight filed an appeal. Defendants refused to issue a final decision. On September 20, 2019, Knight filed Article 78 - 101449/2019 requesting Mandamus. (Ex 4 - Part C: 37)

**(45)**   **State CBL Notice of Disapproval After Appeal**

**130.**   After Knight filed Article 78 - 101449/2019 on October 01, 2019, (16) days later Defendants issued a Notice of Disapproval After Appeal letter dated October 17, 2019. This letter was issued approximately *(1) year, (9) months, and (4) days* after the Defendants received Knight's Appeal of Application Disapproval request letter. Within the Notice of Disapproval After Appeal Defendants averred that Knight did not possess a State FDL which in turn prohibits him from receiving a State CBL. (Ex 4 - Part B: 19 (A) ¶ 4)

**131.**   And if Knight were to transport any inventory to off-site storage locations and/or gun shows under his FFL 01. He would be subject to criminal liability in violation of 18 U.S.C. § 923, 27 C.F.R. § 478.50(a)(c), and § 478.100(a)(1). Defendants avered that Knight is ineligible for a State FDL. Then *arbitrarily* claimed that he should still apply for the State FDL. (Ex 4 - Part B: 19 (A) - ¶ 7)

> **(a)**   You state that you travel with firearms for retail sale (Interview Questionnaire, Question 61). *Please be advised that since you do not have a gun dealer license issued by the Police Commissioner, you are not authorized to travel with firearms for retail sale in New York City, and doing so may subject you to criminal liability.*

> **(b)**   If you wish to apply for a gun dealer license in New York City, you may obtain an application from License Division by contacting Associate Investigator Gilliam at (xxx) xxx xxxx. *However, before doing so, please note that you do not fulfill some of the requirements, such as having a business location in New York City with a certificate of occupancy that allows a firearms dealer to operate at the location (NYC Admin. Code, Section 10-302), as you have previously been informed.*

### (46)   (2020) Article 78 - 151725/2020: Petition

**132.**   On March 13, 2020, Knight filed Article 78 - 151725/2020. Knight's (2017) denial stated that although Knight possessed an FFL 01. He did not submit a State FDL under 38 R.C.N.Y. § 4-03 with his State CBL application. (Ex 4 - Part B: 19)

## 6)   Injury-In-Fact, Causation & Redressability

**133.**   Gun stores within the City profit from the use of their shooting range. It would be cost-prohibitive for Knight and/or FFL 01s to acquire inventory to stock a brick & mortar store. Whereas Defendants prohibit FFL 01s from keeping handguns on open display within their store and only allow handgun license holders to request (1) Handgun Purchase Authorization every (90) days to limit firearm sales.

**(a)**     "[T]he right of the people to keep and bear Arms" means nothing if the government can prohibit all persons from acquiring a handgun. Law-abiding citizens can only obtain (1) handgun every (90) days by requesting government permission. If their request is approved they can only purchase (1) handgun per authorization every (90) days. How can an FFL 01 sustain a business if every customer can only purchase (1) handgun in interstate commerce every (90) days or only (4) times a year?

**134.**   Defendants aver that handguns can only be purchased from an NYS Firearms Dealer. Handguns can be purchased via mail-order and/or e-commerce from any FFL 01 in any State. All law-abiding citizens can go to any e-commerce dealer's website and purchase any firearms that are legal to possess within their home state. The e-commerce dealer would ship the firearm to a retail FFL 01 in the customer's home state. The customer would have to visit their retail FFL 01. Fill out an ATF Form 4473 and pass an FBI background check this is known as a *transfer*. By prohibiting Knight and/or FFL 01s from selling handguns in interstate commerce via mail-order and/or e-commerce. Defendants are prohibiting FFL 01s from making handgun transfers to FFL 01s in other States in violation of the Commerce Clause.

## 7)   <u>Waiting Periods are Unconstitutional</u>

**135.**   NYC Admin Code 10-302.1 purchasing another handgun can take (6) months+. Applicants can only request (1) Handgun Purchase Authorization every (90) days. This takes (6) weeks to process if approved and a handgun is not purchased within (30) days. The Authorization Form must be returned by hand not mail or the handgun license will be suspended and/or revoked. After purchase, the applicant has to make an appointment to have the handgun inspected by the License Division before the handgun can be transported to a range or out of the City. Defendants are issuing gun inspection dates that exceed (2) or more months. (Ex 4 - Part C: 38)

**136.**   Waiting periods such as this are a violation of the 2nd Amendment rights of all law-abiding citizens who intend to acquire handguns for self-defense in the City. Defendants have not provided any public safety reason for this 90+ day waiting period. Or attempted to narrowly tailor this process so that it does not violate the 2nd Amendment. (Ex 4 - Part C: 38 (A))

| | | |
|---|---|---|
| Application Investigation | Waiting Period | 6 Months |
| Purchase Authorization | Waiting Period | 90 Days |
| Processing Time | Waiting Period | 6 Weeks |
| Inspection Appointment | Waiting Period | 2 Months |
| | Waiting Period (Varies) | 1 Month+ |
| | Total | 12 Months+ |

**137.**   First, the Orders "implicate[d] the core of the Second Amendment right" because they foreclosed the ability to acquire arms and ammunition and maintain proficiency in the use of firearms rights which an en banc panel of this court has repeatedly acknowledged are "necessary to the realization of the core right to possess a firearm for self-defense." *Teixeira v. Cnty. of Alameda*, 873 F.3d 677 (9th Cir. 2017); *see also id.* ("As with *purchasing ammunition* and *maintaining proficiency in firearms use*, the core Second Amendment right to keep and bear arms for self-defense wouldn't mean much without the *ability to acquire arms.*" (emphases added) (citation and internal quotations omitted)); *see also id.* at 680 ("[G]un buyers have no right to have a gun store in a particular location, *at least as long as their access is not meaningfully constrained.*" (emphasis added)); *id.* at 682 ("Commerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense . . . ."). (Ex 3 - Part D: Ex 72)

**138.** If these rights are "necessary to the realization of the core Second Amendment rights," *id*. at 677, then a *fortiori* they must "implicate[] the core of the Second Amendment right." <u>*Silvester*</u>, 843 F.3d at 821. *See,* <u>*McDougall v. Cnty. of Ventura*</u> No. 20-56220 (9th Cir. Jan. 20, 2022). (Ex 3 - Part D: 73)

**139.** On the merits, the Los Angeles County Orders (Orders) both burdened conduct protected by the Second Amendment and fail strict and intermediate scrutiny. *See* <u>*McDougall,*</u> ___F.4th at __. While the 11-day mandated closure at issue here is shorter than the 48-day closure at issue in <u>*McDougall*</u>, 11 days instantly becomes 21 days when adding California's 10-day waiting period for acquiring firearms. *See,* <u>*Silvester v. Harris*</u>, 843 F.3d 816, 819 (9th Cir. 2016). (Ex 3 - Part D: 74)

**140.** And a 21-day delay for acquiring a firearm is more than double the delay considered in <u>*Silvester*</u>. *Id.* Moreover, an 11-day total ban on law-abiding citizens' ability to practice with firearms at firing ranges or acquire firearms and ammunition *at all* which the Orders clearly indicated could be perpetually extended if the County so decided severely burdens the core of the Second Amendment right at a time of crisis, precisely when the need to exercise that right becomes most acute. *See* <u>*S. Bay United Pentecostal Church v. Newsom*</u>, 141 S. Ct. 716, 718 (2021) (Statement of Gorsuch, J.) ("Even in times of crisis perhaps especially in times of crisis we have a duty to hold governments to the Constitution."). *See,* <u>*Martinez v. Villanueva*</u>, No. 20-56233 (2022). (Ex 3 - Part D: 75, 76)

**(a)**     Waiting periods are arbitrary impositions with no effect on crime or suicide, introduce no additional investigative avenues, and only burden law-abiding gun owners without changing how or when criminals obtain firearms.

**(b)**     Waiting periods do not change the background check process; no additional investigative measures are taken no matter how long of a waiting period is imposed. Most background checks are resolved instantly, but investigations can currently last up to 90 days.

**(c)**     There is no evidence that waiting periods reduce suicides, homicides, or mass shootings. No studies that identify causal effects have been identified by any of the independent literature reviews conducted since 2004.

**(d)**     Recent research that purports to find that waiting periods reduce firearm-related deaths is fundamentally flawed, as it also finds that background checks increase gun homicides and that poverty is associated with a decrease in homicides.

**(e)**     The average time-to-crime for firearms traced by the BATFE in 2018 was nearly nine years, so the idea that guns are often used in crimes of passion or impulsive actions right after purchase is not supported by anything other than anecdotal evidence.

**(f)**     Criminals will not be affected by waiting periods. Most state inmates who were in possession of a firearm at the time of their arrest obtained the firearm through an illegal source or from a friend or family member.

**(g)**     There are few prosecutions of prohibited persons who attempt to buy a firearm from a dealer. Out of 112,090 total federal denials in 2017, there were 12 prosecutions.

**(h)**     The waiting period mandated by the Brady Act of 1993 was only in effect until the National Instant Check System came online in 1998.

**(i)**     Most gun-owners own more than one firearm and a waiting period could not possibly have an effect on those purchasing an additional firearm. First-time buyers seeking a firearm for self-defense would be affected by a waiting period that limits their ability to safeguard themselves and their loved ones.

**141.** Waiting periods were once part of federal law, mandated by the Brady Handgun Violence Prevention Act of 1993 but only until the National Instant Criminal Check (NICS) came online in 1998. The five-day waiting period mandated under the Brady Bill was replaced with the instant check system.

**142.** While most checks are instant, the FBI has three days to complete the background check before the transfer can proceed. The investigation can continue well past three days and, in cases in which the firearm was transferred after the three-day window, the case is referred to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATFE) for retrieval of the firearm.

**143.** Arguments for waiting periods focus on two easily disproven claims: waiting periods allow more time for the background investigation and allow for a cooling-off period. There is no evidence to support either claim.

**144.** First, the mechanism of the background check is not altered in the presence of a waiting period. The FBI would still run the prospective buyer's information against the same databases containing the same information they do now. Most buyers will continue to be approved instantly, and those who are flagged for additional investigation will still be flagged for additional investigation. The investigation itself remains the same and can continue for 90 days when the data is required to be destroyed. No additional information will be uncovered with the addition of a waiting period on top of the existing three-day delay.

145.    In increasingly rare cases in which the initial check is delayed and the firearm is transferred after three days and then the buyer is determined to be prohibited, the FBI refers the case to the BATFE for retrieval of the firearm. In 2018, the FBI forwarded 4,240 background check denials to the BATFE that potentially involved firearm retrieval.

146.    In 2017, approximately 25.6 million firearm-related background checks were processed through NICS and about 181,000 – or 1% - were denied because the person was prohibited under federal or state law. More than 89% of federal NICS checks were resolved immediately in 2018, though this is down from 2014. There was no need for investigation in 89% of federal NICS checks. The FBI estimates that out of 100 potential gun buyers, 70 checks are resolved immediately and 30 are transferred to the NICS section for follow-up. Of those 30, 20 are completed after the initial delay and 10 are delayed for additional research. On average, there will be 1.21 denials for every 100 background checks conducted.

147.    Prohibited persons who attempt to buy a firearm from a dealer are rarely prosecuted. Federal denials accounted for 112,090 of the total 181,000 denials in 2017 (the others occurred in point of contact states). The BATFE Field Divisions investigated 12,710 of these cases and United States Attorney's Offices prosecuted 12 cases. Between 10% and 21% of people investigated by the BATFE were later arrested for a crime involving guns. Ten of the thirteen point of contact states do not investigate or prosecute NICS denials, though some may refer the cases to local law enforcement for investigation.

148.    Oregon, Pennsylvania, and Virginia are the only point of contact states that investigate a high proportion of firearms purchase denials. Proponents of the waiting period claim it is a cooling-off period that supposedly gives the prospective buyers time to reconsider their intentions and protect against impulsive actions. This argument has no logical basis. Two-thirds of gun owners own more than one gun. A cooling-off period for these gun owners could not possibly have an effect as they already own other firearms. Anecdotal evidence about a person who purchases a firearm and then immediately uses it to harm themselves or somebody else are just that: anecdotal. There is no scientific evidence that waiting periods have any effect on suicide, homicide, or mass shootings.

149.    During September 30, 1993, hearings on the Brady Bill before the House Judiciary Committee Subcommittee on Crime and Criminal Justice, Assistant Attorney General Eleanor Acheson testified for the Department of Justice that there were no statistics suggesting that a large percentage of guns used in crime were used in those crimes within a few days or week of their purchase, much less in a moment of passion.

150.    A study of California handgun buyers published in 1999 found that the risk of suicide utilizing a firearm among gun buyers in the first week was 57 times as high as the adjusted rate in the general population and this is the first week after the 15 days between the purchase application and receipt of the handgun. The authors concluded that "The increase in the risk of suicide by firearm is apparent within a week after the purchase of a handgun and persists for at least six years."

**151.** No Effect on Crime. In 2017, the national average time-to-crime of traced firearms was 8.8 years. Only about 6.5% of successfully traced firearms were used in a crime within the first three months of the retail purchase.

**152.** Few state prison inmates who possessed a firearm at the time of their arrest legally purchases the firearm from a retail store (7.5%), pawnshop (1.6%), flea market (0.4%), or gun show (0.8%). Most acquired the gun off the street or from a drug dealer (43.2%) or through theft (6.4%). An additional 25.3% acquired the gun from a friend or family member.

**153.** The Lack of Scientific Evidence. Independent reviews of the scientific literature have repeatedly deemed the evidence on the effect of waiting periods to be inconclusive.

**154.** In 2003, the Centers for Disease Control published the findings of the Task Force on Community Preventive Services Regarding Firearms Laws and Prevention of Violence. They found insufficient evidence to determine the effectiveness of waiting periods for firearm acquisition. The evidence is insufficient because of a small number of studies, inconsistent evidence of effectiveness, and limitations in the design and execution of available studies. The apparent reduction in rates of firearms suicides among persons aged >55 years, associated with the interim Brady Law, is attributable to waiting periods in the interim law. It should be noted that this review did not exclude any studies for having a weak methodology.

**155.** The National Research Council conducted a similar review in 2004. This included a review of a Ludwig and Cook study from 2000 that found no significant differences in homicide and suicide rates between the treatment and control groups, though they did find a reduction in gun suicides among persons age 55 and older in the treatment states. The treatment was the implementation of the Brady Bill; the control group was the states that already had equivalent legislation about background checks and waiting periods. A later version of the Ludwig and Cook study did not meet the eligibility requirements for synthesis of research conducted by Rand, discussed below.

**156.** Robert A. Hahn was the lead author of a review of firearms laws and their effects in 2005. Hahn, et al., found the evidence of the effect of waiting periods on suicides inconclusive and found insufficient evidence for determining the effectiveness on violent crime.

**157.** Earlier this year, the Rand Corporation published The Science of Gun Policy, a systemic review of firearm-related studies published since 2003. Rand's methodology only allowed for studies that were designed to identify causal effects among observed associations between policies and outcomes. Rand identified no qualifying studies that estimated the effects of waiting periods on suicides.

158.    A single study on the effect of waiting periods on violent crime and intimate partner homicide was identified, but the evidence was determined to be inconclusive. Based on this one study and an assessment of its strengths, Rand found no conclusive evidence for the effect of waiting periods on violent crime generally or intimate partner homicide in particular.

159.    Rand identified two studies that estimated the effects of waiting periods on mass shootings but deemed the evidence inconclusive. One study found the length of waiting periods to have uncertain effects on the likelihood that at least one mass shooting occurred in a state. The other found a suggestive effect consistent with the passage of any waiting-period law increasing the incidence of mass shootings. There were methodological concerns with both studies and so the evidence is inconclusive.

160.    A more recent study by a trio of authors from Harvard Business School claims to have found that waiting periods reduce gun deaths by 17%. Their model fails to incorporate controls for educational attainment, crime rates, police resources, and incarceration rates control used by virtually every other researcher studying firearms-related policy effects. This study did find that waiting periods reduce all homicides and suicides, as well as specifically firearms-related suicides but found that background checks increase homicides. The authors also found that poverty decreased firearm-related homicides and that poverty, urban areas, and younger aged cohorts were not associated with total homicides. The model is misspecified, but the finding was run across popular media with no mention of the effect of background checks.

**161.**   And just as there exists a right to acquire arms and the ammunition they require, there exists an equivalent and corresponding right to sell those items. "Throughout history and to this day the sale of arms is ancillary to the right to bear arms." _Teixeira_, 873 F.3d at 693-94 (Tallman, J., dissenting) (footnote omitted). "As British subjects, colonial Americans believed that they shared equally in the enjoyment of [the English right to arms] and that the right necessarily extended to commerce in firearms." _Teixeira v. Cty. of Alameda_, 822 F.3d 1047, 1054 (9th Cir. 2016), rev'd en banc, 873 F.3d 670 (9th Cir. 2017). The earlier panel opinion in _Teixeira_ went on to explain the right to sell firearms from a historical perspective.

### (47)   <u>Privileges and Immunities Clause of Article IV, Section 2</u>

**162.**   Defendants, are requiring Knight and/or FFL 01s to locate an area zoned for a firearms dealer's business in the City. Then lease commercial space from an institutional investor or hedge fund in the City at a cost of thousands of dollars per month. Knight and/or FFL 01s have to lease a brick & mortar store before they can even submit a non-refundable fee to apply for a State FDL to sell handguns and/or ammunition in the City which would take six months to over a year to process.

**163.**   If issued, Knight and/or FFL 01s would have to submit another non-refundable fee to apply for a State CBL to handle inventory. Which would take another six months to over a year to process. Knight and/or FFL 01s would be responsible for leasing a commercial space in the City for upwards of (2) years. However, without possessing either of the two required State licenses to conduct business Knight and/or FFL 01s would not make a profit for (1) to (2) years.

**164.** Knight would not be able to sustain this lease. And after opening a brick & mortar store Defendants could still discretionally deny issuing Knight a State FDL and/or State CBL. "No state shall convert a liberty into a license, and charge a fee, therefore." *See*, <u>*Murdock v. Pennsylvania*</u>, 319 U.S. 105 (1943). (Ex 3 - Part D: 77)

**165.** Why did Defendants take (1) year, (9) months, and (4) days to issue Knight's Disapproval After Appeal? And (2) years, (4) months, and (2) days to finally deny Knight's (2017) State CBL application? The only purpose this served was to delay Knight's right to file an Article 78 in violation of Procedural Due Process.

### State CBL Application Timeline

| | | |
|---|---|---|
| **(1)** | State CBL Application Submitted | 06.16.2017 |
| **(2)** | State CBL Application Interview | 08.19.2017 |
| **(3)** | Notice of Disapproval - (Letter) | 12.13.2017 |
| **(4)** | Appeal of Notice of Disapproval | 01.12.2018 |
| **(5)** | Article 78 - 101449/2019 Mandamus (Final Determination) | 09.20.2019 |
| **(6)** | Notice of Disapproval After Appeal | 10.17.2019 |

## 8) <u>No Collateral Estoppel: False Written Statements</u>

**166.** Defendants stated within their (2017) denial letter(s) and *Exhibit D* of their (2020) Answer and/or Memorandum of Law. That Knight stated in his Letter of Necessity that *"he needed a concealed carry handgun because, he is a "body armor dealer," who was subject to extraordinary physical danger."* This is a materially false statement. A review of Defendant's *Exhibit D* validates that Knight never stated that he was applying for a State CBL because he was subject to extraordinary physical danger as a body armor dealer. Section 5 of the State CBL application clearly states that Knight's Type of Business is an FFL 01 Firearms Dealer. (Ex 4 - Part C: 39)

**(a)**   (DOC 62) p. (2) Memorandum of Law: Petitioner Cavalier Knight ("Petitioner") does not have the statutorily-required "proper cause" necessary to obtain a Carry Business handgun license ("Carry Business license") under New York Penal Law ("PL") § 400.00(2)(f) or Section 5-03 of Title 38 of the Rules of the City of New York ("R.C.N.Y."). *In his application for a Carry Business license, Ex. D, Petitioner stated that he needed a concealed carry handgun because, as a body armor dealer, he was subject to extraordinary physical danger.* Petitioner did not support his claim with any documentation or proof whatsoever. Therefore, the License Division of the New York City Police Department ("NYPD") the administrative body charged with determining applications for handgun licenses in the City of New York reasonably and rationally determined that Petitioner failed to demonstrate the requisite "proper cause" necessary to obtain a Carry Business handgun license. (Ex 4 - Part C: 40 - p. 2 - ¶ 1)

**167.**   Knight's application also contains a Letter of Reference from a former Special Agent of the FBI. Referencing his good character and acknowledging his involvement in the firearms industry. The Letter of Necessity references the 2nd Amendment and the Gun Control Act of 1968. (Ex 4 - Part D: 41)

**168.**   Defendants took the reason for Knight's (2014) denial and used it as the reason for the (2017) denial. By claiming that Knight applied for a State CBL as a body armor dealer in (2013) and (2017). Defendants made materially false statements within their Answer and/or Memorandum of Law to falsely claim collateral estoppel. Thus creating *post hoc* rationalizations after the fact as a substitute for providing a rational reason for their decision on the record.

**169.**   Agencies can fail an *arbitrary and capricious* review by offering *post hoc* rationalizations to justify the action in question. Moreover, it is long settled that agencies must provide a written record and an explanation for their decisions sufficient to enable intelligent judicial review of administrative actions. *See, Matter of Perpente v. Moss*, 293 N.Y. 325, 329 (1944). (Ex 3 - Part D: 78)

**170.** Explanations or rationales supplied after the fact, in the context of litigation, are insufficient to justify agency actions retroactively. *See*, *Matter of Scherbyn v. Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 N.Y.2d 753, 759 (1991); *see*, Patrick J. Borchers & David L. Markell, *New York State Administrative Procedure & Practice* § 8.6 (1998) ("noting that an agency is not free to invent 'post hoc rationalizations' for its decisions). (Ex 3 - Part D: 79)

**171.** Judicial review of an agency decision is limited to the reasons given by the agency in its decision. An agency cannot use its answer in a CPLR Article 78 proceeding as a substitute for providing a rational reason for its determination. *Central N.Y. Coach Lines, Inc. v. Larocca*, 120 A.D.2d 149, 152 (3d Dep't 1986). (Ex 3 - Part D: 80)

### (48)   No Collateral Estoppel: No Challenge to NYS PL § 400.00

**172.** 38 R.C.N.Y. and/or NYC Admin. Code could never survive any tier of scrutiny. Defendants made materially false statements. And claimed on the record before the Court(s) below that Knight constitutionally challenged NYS PL § 400.00. Paragraphs (1 & 2) of Knights Article 78 - 151725/2020 Petition validate that Knight only constitutionally challenged 38 R.C.N.Y. and/or NYC Admin. Code. (Ex 4 - Part D: 42)

**173.** Defendants acknowledge in (DOC 62) p. (23) of their Memorandum of Law. That within Knights Article 78 - 151725/2020 Petition. Knight stated he was not challenging NYS PL § 400.00-(2)(f). And only constitutionally challenging 38 R.C.N.Y. and/or NYC Admin. Code (Ex 4 - Part C: 40 - p. 23)

**(a)**   (DOC 62) p. (23) Memorandum of Law: Here, Petitioner challenges the constitutionality of the proper cause requirements set forth in PL § 400.00(2)(f) and 38 RCNY § 5-03. Petitioner did not aver that he notified the AG of this proceeding. Although "Petitioner avers that *he is not challenging the constitutionality of PL § 400.00(2)(f) or 38 RCNY § 5-03*, see Am. Pet. ¶ 1, it is clear that Petitioner argues that this statute and rule violate, inter alia, the Second Amendment to the U.S. Constitution. Therefore, Petitioner's purported constitutional claims against PL § 400.00(2)(f) and 38 RCNY § 5-03 cannot be considered by the Court now.

### (49)   No Collateral Estoppel: NYPD Admits New Litigation

**174.**   Defendants are infringing on the 2nd Amendment core rights of all the law-abiding citizens who cannot purchase handguns for self-defense from Knight and/or FFL 01s in interstate commerce in the City. Supreme Court precedent dictates that gun stores may assert the 3rd Party standing of their customers.

**175.**   Collateral estoppel only bars identical issues that were litigated and decided or could have been. The (2014) denial was for body armor the (2017) denial was based upon Knight's possession of a license he received from the *federal government* to sell constitutionally protected goods and/or services i.e handguns. Knights Petition challenged the constitutionality of 38 R.C.N.Y. and/or NYC Admin. Code which *facially* violates the Commerce Clause and *as-applied* to Knight and/or FFL 01s. With collateral estoppel or issue preclusion, the prior judgment conclusively resolves an issue litigated and determined in the first action. (*DKN Holdings LLC*, supra 61 Cal.App.4th at 824). (Ex 3 - Part E: 81)

**176.**   Issue preclusion applies: (1) after final adjudication; (2) of an identical issue; (3) litigated and necessarily decided in the first suit; and (4) asserted against one who was a party in the first suit or one in privity with that party. (*Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990); *Vandenberg v. Superior Court*, 21 Cal.App.4th 815,828 (1999); *Teitelbaum Furs v. The Dominion Insurance Company LTD*, (1962) 58 Cal.2d 601, 604). (Ex 3 - Part E: 82, 83, 84)

**177.**   Defendants cannot invoke collateral estoppel to supplant the strict scrutiny review of the constitutional violations. Which exists within the (2017) denial of Knight's State CBL application. Defendants have invalidated their materially false claim of collateral estoppel. Admitting within (DOC 60) of Article 78 - 151725/2020.

**178.**   That the Petition alleges six causes of action under the U.S. Constitution, two causes of action under the N.Y. Constitution, eight causes of action under N.Y. statutes, twelve causes of action under federal statutes and regulations, and three causes of action demanding a declaratory judgment. Which were never previously litigated within Article 78 - 101556/2014. (Ex 4 - Part D: 43)

> **(a)**   <u>The same reasons that were previously relied upon to deny your prior request for a carry business license continue to apply.</u> Your claim that having a Federal Firearms License (FFL), and being a sales associate for Armored Mobility, Inc., somehow authorizes you to have a Carry Business license, is incorrect. Having a FFL does not, ipso facto, authorize you to be a gun dealer in New York City; to the contrary, a gun dealer license is also required under NYS law (Penal Law Section 400.00(1), issued by the Licensing Officer (Penal Law 400.00(1)), who, in the City of New York, is the Police Commissioner (Penal Law 265.00(10). If you were a NYC licensed gun dealer, you would have a stronger basis to apply for a carry business license, since you would be in the business of selling guns in New York City. (Ex 4 - Part B: 19 (A) - ¶ 4)

**9)**     **Article 78 - 151725/2020: Petition Summarily Dismissed**

**179.**     The Privileges and Immunities Clause of Article IV, Section 2 of the Constitution states that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." It is well settled that an agency acts *arbitrarily and capriciously* by failing to comply with its own rules and regulations (*see*, <u>Matter of Frick v. Bahou</u>, 56 N.Y. 2d 777 (1982), 778; <u>Church v. Wing</u>, 229 AD 2d 1019 (1996). The rules of an administrative agency, duly promulgated, are binding upon the agency as well as upon any other person who might be affected (*see*, <u>People ex rel. Doscher v. Sisson</u>, 222 N.Y. 387, 393-394 (1918)). (Ex 3 - Part E: 85, 86, 87)

**180.**     If the decisions made by the Court(s) below are allowed to stand. Knight and/or FFL 01s in the City will never be able to acquire a State FDL to sell handguns and/or ammunition intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce in violation of NYS PL § 400.00(1)(n). Without being forced by Defendants to possess a brick & mortar store in the City. Nor could they ever acquire a State CBL to handle inventory in violation of NYS PL § 400.00(2)(f). On October 29, 2020, Knight's Article 78 - 151725/2020 Petition was summarily dismissed. (Ex 4 - Part B: 19 (B))

**181.**     The ability to pursue one's profession or common calling is one of the limited number of foundational rights protected under the Privileges and Immunities Clause of Article IV, Section 2. *See*, <u>Toomer v. Witsell</u>, 334 U.S. 385, 396 (1948); *see* also <u>United Bldg. & Constr. Trades Council v. Camden</u>, 465 U.S. 208, 219 (1984). (Ex 3 - Part E: 88, 89)

**182.** ("Certainly, the pursuit of a common calling is one of the most 'fundamental of those privileges' protected by the Clause"). Indeed, "[m]any, if not most, of [the Supreme Court's] cases expounding the Privileges and Immunities Clause have dealt with this basic and essential activity." <u>Camden</u>, 465 U.S. at 219.

**183.** Licensing statutes present a hurdle to entering the workforce because many requirements may be *too expensive*, time-consuming, arbitrary, or difficult for some aspirants to meet, locking them out of their intended profession. The Supreme Court has struck down state laws that infringed rights guaranteed by the Privileges and Immunities Clause of Article IV. *See*, <u>Hicklin v. Orbeck</u>, 437 U.S. 518, 98 S. Ct. 2482, 57 L. Ed. 2d 397 (1978). (Ex 3 - Part E: 90)

**184.** As British subjects, colonial Americans believed that they shared equally in the enjoyment of this guarantee and that the right necessarily extended to commerce in firearms. Colonial law reflected such an understanding. For instance, in Virginia, all persons had "liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony." Laws of Va., Feb., 1676-77, Va. Stat. at Large, 2 Bening 403. It came as a shock, therefore, when the Crown sought to embargo all imports of firearms and ammunition into the colonies. 5 Acts Privy Council 401, reprinted in Connecticut Courant, Dec. 19, 1774, at 3.

**185.** The General Committee of South Carolina declared in response that "by the late prohibition of exporting arms and ammunition from England, it too clearly appears a design of disarming the people of America, in order the more speedily to dragoon and enslave them." 1 John Drayton, Memoirs of the American Revolution As Relating to the State of South Carolina 166 (1821) (internal quotation marks omitted). Such suspicions were not unwarranted. As war raged in 1777, Colonial Undersecretary William Knox recommended that the Americans, once conquered, be subdued, in part, by prohibiting their means of producing arms: "the Arms of all the People should be taken away ... nor should any Foundery or manufactuary of Arms, Gunpowder, or Warlike Stores, be ever suffered in America, nor should any Gunpowder, Lead, Arms or Ordnance be imported into it without Licence." Leland J. Bellot ed., William Knox Asks What is Fit to Be Done with America? in 1 Sources of American Independence 140, 176 (Howard H. Peckham ed., 1978).

**186.** In ratifying the Second Amendment, the States sought to codify the English right to keep and to bear arms. *See*, _Heller_, 554 U.S. at 599, 128 S.Ct. 2783. The historical record indicates that Americans continued to believe that such right included the freedom to purchase and to sell weapons. In 1793, Thomas Jefferson noted that ***"[o]ur citizens have always been free to make, vend, and export arms. It is the constant occupation and livelihood of some of them."*** Thomas Jefferson, 3 Writings 558 (H.A. Washington ed., 1853).

**187.**   Indeed, as one commentator of the early Republic pondered, "What law forbids the veriest pauper, if he can raise a sum sufficient for the purchase of it, from mounting his Gun on his Chimney Piece ...?" <u>Heller</u>, 554 U.S. at 583 n. 7 (quoting Some Considerations on the Game Laws 54 (1796). <u>Teixeira</u>, 822 F.3d at 1054-55.

**188.**   When considering the historical context of the 2nd Amendment in the late 18th Century, it is important to realize that *"Federalists and anti-Federalists alike had linked the preservation of liberty to an armed populace."* Robert E. Shalhope, *The Armed Citizen in the Early Republic,* 49 LAW & CONTEMP. PROBS. 125, 136 (1986). As Professor Shalhope explains, during this time period the drafters of the Bill of Rights *"firmly believed in two distinct principles: (1) individuals had the right to possess arms to defend themselves and their property; and (2) states retained the right to maintain militias composed of these individually-armed citizens." Id.* at 133. Indeed, there is little quarrel with the notion that arms were ubiquitous in late 18th Century America whether for self-defense, defense of personal property or hunting to feed one's family.

**189.**   How, then, did the inhabitants of agrarian America at this time acquire their arms? It was through the many gunsmiths and merchants located throughout the colonies who sold them, for at this time there were but a few companies devoted to the largescale manufacture of arms.

190.    In the late 18th Century, when 95% of the population of colonial America lived on farms, available firearms largely consisted of "flintlock fowlers" long guns which served to put food on the table and to protect one's home and family from marauding Indians and/or enemy soldiers. See, Tom Grinslade, Eighteenth Century American Fowlers the First Guns Made in America, AM. SOC'Y OF ARMS COLLECTORS BULL. 89:1-9 (Spring 2004). Pockets of firearm manufacturing gun making shops or small factories developed in specific areas such as New England, the Hudson Valley and Kentucky, where gunsmiths settled and began producing "fowlers" with distinctive features and characteristics. Id.

191.    Unlike modern times, gunsmiths and purveyors of firearms in the late l700's were free to engage in commerce in arms with other colonists without restriction. In his extensive historical survey of American firearm laws dating back to colonial times, which purportedly included a review of over 1,000 laws falling into 20 different categories, such as brandishing laws, gun carry restrictions, firing local restrictions, and registration and taxation, Professor Richard Spitzer does not cite a single firearm sales law which regulated, barred or licensed sales in the 18th Century (or the 19th Century for that matter). Robert J. Spitzer, Gun History and Second Amendment Rights, 80 LAW & CONTEMP.PROBS. 55, 75 (2017).

192.    The earliest such law cited was a Georgia law from 1902. Id. Thus, the ubiquitous nature of firearms and unregulated commerce in arms in colonial America supports the view that the right to sell firearms whether freestanding or ancillary is implicit in the 2nd Amendment.

**(50)   Jonathan Zeron v. Dermot F. Shea, et al., No. 154821/2020**

**193.**   Mr. Zeron resides in Westchester Cty., NY. He possesses an FFL 01 a State FDL and a Westchester County Pistol Permit (Carry Concealed). He applied for a Special Carry License from the Defendants as an addendum to his Westchester County Pistol Permit (Carry Concealed). *See*, *Jonathan Zeron v. Dermot F. Shea*, et al., Index No. 154821/2020. (Ex 4 - Part D: 44)

> **(a)   Special Carry License:** The Special Carry License is valid for the business name, address and handguns listed on the license, only while the licensee has in his possession a valid carry county license issued according to the provisions of article 400 of the N.Y.S. Penal law. Upon the revocation, suspension, or cancellation of the basic county license, the Special Carry License is rendered void and must be immediately returned to the License Division. **Licenses & Permits**

**194.**   Upon applying for his Special Carry License to conduct business within the City. Defendants implied that Mr. Zeron needed to open a brick & mortar store in the City and then apply for a State FDL. Although Mr. Zeron already satisfied the *proper cause* requirement under NYS PL § 400.00(2)(f). When he received his Westchester Cty. (Carry Concealed). Defendants avered that Mr. Zeron failed to meet the *proper cause* requirement under NYS PL § 400.00(2)(f) in the City.

> **(a)   **Mr. Zeron is a gun dealer. He has a Federal Firearms license and a New York State (NYS) Dealer in Firearms license issued in Westchester County. He seeks a Special Carry license to carry a gun for self-protection while engaging in gun dealing in New York City (NYC) (e.g., buying, selling, and transporting guns). However, a Firearm Dealer license issued in NYC by the NYC Licensing Officer is required in order to engage in gun-dealing in NYC. Mr. Zeron has no such license, and, therefore, he cannot do so. Accordingly, Mr. Zeron does not have proper cause for the requested license since the activity for which he seeks protection is unauthorized. (Ex 4 - Part D: 45 - p. 39)

**195.**   Defendants averred that the *proper cause* requirement under NYS PL §
400.00(2)(f) which Mr. Zeron satisfied to receive his Westchester County Pistol Permit
(Carry Concealed). Is different than the *proper cause* requirement to receive a Special
Carry License in the City. This is in contravention of NYS PL § 400.00. *See*, <u>*Chwick
v. Mulvey*</u>, NY Slip Op 09911 (2010). (Ex 3 - Part A: 07)

**196.**   There are (62) counties within the State; according to Defendant's place
of business requirements. Every FFL 01 in the City would require (1) State FDL and
(1) brick & mortar store in the City. And (1) additional State FDL and (1) store within
each of the other (57) counties in the State for a total of (58) stores. Defendants aver
that an FFL 01 is invalid unless every FFL 01 holder in the country opens a brick &
mortar store within the City. There are (9) different types of federal licenses totaling
(134,643) throughout the country. Of this group if all (52,365) FFL 01s wanted to
conduct business within the City where would all (52,365) brick & mortar stores be
located? This is an egregious violation of the Commerce Clause and an Article III
economic injury-in-fact. Which consists of over (52,000) FFL 01s outside of the City
who cannot engage in interstate commerce with FFL 01s and/or law-abiding citizens
within the City. (Ex 4 - Part D: 46) **FFL Listings**

**197.**   <u>*New York State Rifle & Pistol Association, Inc. v. Bruen*</u>, No. 20-843
(U.S.) involves a challenge to the *proper cause* requirement for receipt of a State CBL
to carry firearms outside of the home. A *stay* of this case pending that decision would
likely be dispositive insofar as issuance of a State CBL to Knight and/or FFL 01s.
However the State FDL and waiting period matters, etc still require adjudication.

# CLAIMS FOR RELIEF

## AS FOR A FIRST CAUSE OF ACTION
### [42 U.S.C. § 1981]

**198.**   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint;

**199.**   38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively substantially burden and violate the pre-existing individual right protected by the Civil Rights Act of 1866, to wit, the right to make contracts, to own property, to sue in court, and enjoy the full protection of federal law;

**200.**   38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively should be enjoined and stricken as unconstitutional on their face, and as-applied to Knight and/or FFL 01s as they violate preexisting rights protected by the 42 U.S.C. § 1981, 42 U.S.C. § 1983;

> **(a)**   Defendants require Knight and/or FFL 01s to possess a State CBL to handle inventory. And the State requires Knight and/or FFL 01s to possess a State FDL to sell handguns and/or ammunition. Knight is a PASSPort vendor with the Mayor's Office of Contract Services with a commodity of 384 - Law Enforcement Police Equipment and Supplies. He can buy and sell shotguns and rifles having barrels less than (18) inches in length, certain firearms described as any other weapons, machine guns, firearm mufflers, and silencers;

> **(b)**   By denying Knights State CBL he cannot handle any inventory. And only issuing a State FDL to FFL 01s with a brick & mortar store in the City while refusing to amend the application for a State FDL to make it equally applicable to all FFL 01s without a brick & mortar store who can sell constitutionally protected goods and/or services to the City. Prohibits Knight from making contracts as a PASSPort vendor with any City agencies seeking Knights law enforcement commodities.

## AS FOR A SECOND CAUSE OF ACTION
### [2nd Amendment]

**201.**  Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint;

**202.**  38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively substantially burden and violate the pre-existing individual right protected by the 2nd Amendment, to wit, the right to keep and bear arms for self-defense;

**203.**  38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively should be enjoined and stricken as unconstitutional on their face, and as-applied to all law-abiding citizens as they violate preexisting rights protected by the 2nd Amendment, 42 U.S.C. § 1983;

**(a)**  Waiting periods prohibit law-abiding citizens from purchasing more than (1) handgun at a time. And limiting handgun purchases to (1) handgun every (90) days is not a police power or public safety concern and serves no lawful purpose;

**(b)**  If the core of the 2nd Amendment right to possess handguns is self-defense which promotes public safety. Then prohibiting FFL 01s from selling handguns and/or ammunition in interstate commerce via waiting periods would contradict the government's transcendent interest in promoting public safety;

**(c)**  Waiting periods do not change the background check process; no additional investigative measures are taken no matter how long a waiting period is imposed. Most background checks are resolved instantly, but investigations can currently last up to 90 days. Background checks review past events, not future occurrences. What purpose does limiting (1) handgun purchase at a time serve to a law-abiding citizen who has already passed multiple background checks has no new criminal history and already possesses (1) or more handguns?

## AS FOR A THIRD CAUSE OF ACTION
### [Commerce Clause]

**204.** Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint;

**205.** 38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively substantially burden and violate the pre-existing individual right protected by the Commerce Clause, to wit, the right to engage in commerce among the several states;

**206.** 38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively should be enjoined and stricken as unconstitutional on their face, and as-applied to Knight and/or FFL 01s, as they violate preexisting rights protected by the Commerce Clause, 42 U.S.C. § 1983;

> **(a)** Defendants refuse to issue a State FDL to Knight and/or FFL 01s who do not possess a brick & mortar store in the City. And refuse to issue a State CBL to Knight and/or FFL 01s who do not possess a State FDL and a brick & mortar store in the City. They also only allow FFL 01s with a brick & mortar store in the City to sell their constitutionally protected goods and/or services to residents within the City from that one physical location;
>
> **(b)** While prohibiting all FFL 01s in the City from selling their constitutionally protected goods and/or services intrastate at gun shows and intrastate and/or interstate via mail-order and e-commerce. This prohibits Knight and/or FFL 01s from selling their constitutionally protected goods and/or services to all law-abiding citizens outside of the City and/or State of New York. They also prohibit Knight and/or FFL 01s from transporting inventory to off-site storage locations throughout the country in violation of **27 C.F.R. § 478.50(a)**.

## AS FOR A FOURTH CAUSE OF ACTION
### [3rd Party Standing of FFL 01s Customers]

**207.** Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint;

**208.** 38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively substantially burden and violate the pre-existing individual right protected by the 2nd Amendment, to wit, the right to possess firearms for self-defense;

**209.** 38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively should be enjoined and stricken as unconstitutional on their face, and as-applied to all law-abiding citizens, as they violate preexisting 3rd Party rights protected by the 2nd Amendment, 42 U.S.C. § 1983;

    **(a)** Defendants refuse to issue a State FDL to Knight and/or FFL 01s who do not possess a brick & mortar store in the City. And refuse to issue a State CBL to Knight and/or FFL 01s who do not possess a State FDL and a brick & mortar store in the City. They also only allow FFL 01s with a brick & mortar store in the City to sell their constitutionally protected goods and/or services to residents within the City from that one physical location;

    **(b)** While prohibiting all FFL 01s in the City from selling their constitutionally protected goods and/or services intrastate at gun shows and intrastate and/or interstate via mail-order and e-commerce. This prohibits Knight and/or FFL 01s from selling their constitutionally protected goods and/or services to all law-abiding citizens inside and/or outside of the City and/or State. This violates the 3rd Party rights of Knight and/or FFL 01s customers who are all law-abiding citizens that cannot purchase handguns for self-defense from Knight and/or FFL 01s in the City. Striking at the core of the 2nd Amendment right of all law-abiding citizens to acquire and/or possess handguns for self-defense.

## AS FOR A FIFTH CAUSE OF ACTION
### [NY Civil Rights Law § 4]

**210.**   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint;

**211.**   38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively substantially burden and violate the pre-existing individual right protected by NY Civil Rights Law § 4, to wit, the right to keep and bear arms for self-defense;

**212.**   38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively should be enjoined and stricken as unconstitutional on their face, and as-applied to Knight and/or FFL 01 as they violate preexisting rights protected by NY Civil Rights Law § 4, 42 U.S.C. § 1983;

**(d)**   Section 4 - Right to keep and bear arms: A well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms cannot be infringed.

## AS FOR A SIXTH CAUSE OF ACTION
### [Procedural Due Process of the 14th Amendment]

**213.**   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint;

**214.**   38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively substantially burden and violate the pre-existing individual right protected by the Constitution, to wit, depriving any person of life, liberty, or property, without due process of law;

**215.**   38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively should be enjoined and stricken as unconstitutional on their face, and as-applied to Knight and/or FFL 01s" as they violate preexisting rights protected by the 14th Amendment of the U.S. Constitution, 42 U.S.C. § 1983;

    **(a)**   Due process requires that the procedures by which laws are applied must be evenhanded so that individuals are not subjected to the arbitrary exercise of government power. Knight's State CBL application was denied for failing to submit a State FDL. Whereas Defendants never requested a State FDL or informed Knight that he failed to submit a State FDL during the investigation of his State CBL application or before denying his State CBL application;

    **(b)**   Under Revisions to 38 R.C.N.Y., NYPD License Division procedure mandates that Defendants are required to inform all applicants of any missing documentation in writing before disapproval of their State CBL application. All letters requesting additional documentation from applicants must also be submitted to a supervisor for confirmation that the applicants were contacted and informed of any discrepancies so that those issues can be addressed and/or corrected.

## AS FOR A SEVENTH CAUSE OF ACTION
### [Article III Economic Injury-In-Fact]

**216.**     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint;

**217.**     38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively substantially burden and violate the pre-existing individual right protected by the Constitution, to wit, pursue one's profession or common calling;

**218.**     38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively should be enjoined and stricken as unconstitutional on their face, and as-applied to Knight and/or FFL 01 as they violate preexisting rights protected by the Privileges and Immunities Clause Art. IV, § 2, 42 U.S.C. § 1983;

> **(a)**     By denying Knights State CBL he cannot handle any inventory. And only issuing a State FDL to FFL 01s with a brick & mortar store in the City while refusing to amend the application for a State FDL to make it equally applicable to all FFL 01s without a brick & mortar store who can sell constitutionally protected goods and/or services to the City. Prohibits Knight from making contracts as a PASSPort vendor with any City agencies seeking Knights law enforcement commodities;

> **(c)**     Prohibiting Knight and/or FFL 01s from transporting inventory to off-site storage locations outside of the City. And prohibiting Knight and/or FFL 01s in the City from selling their constitutionally protected goods and/or services intrastate at gun shows or intrastate and/or interstate via mail-order and e-commerce. Prohibits Knight and/or FFL 01s from selling their constitutionally protected goods and/or services to all law-abiding citizens inside and/or outside of the City and/or State of New York causing irreparable harm to Knight's and/or FFL 01s.

## AS FOR A EIGHTH CAUSE OF ACTION
### [Equal Protection Clause of the 14th Amendment]

**219.**   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint;

**220.**   38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively substantially burden and violate the pre-existing individual right protected by the Equal Protection Clause of the 14th Amendment, to wit, equal the equal protection of the laws;

**221.**   38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively should be enjoined and stricken as unconstitutional on their face, and as-applied to Knight and/or FFL 01s, as they violate preexisting rights protected by the Equal Protection Clause of the 14th Amendment, 42 U.S.C. § 1983;

> **(a)**   By denying Knights State CBL he cannot handle any inventory. And only issuing a State FDL to FFL 01s with a brick & mortar store in the City while refusing to amend the application for a State FDL to make it equally applicable to all FFL 01s without a brick & mortar store who can sell constitutionally protected goods and/or services intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce. And prohibiting Knight and/or FFL 01s from transporting inventory to off-site storage locations outside of the City;

> **(b)**   Prohibiting Knight and/or FFL 01s in the City from selling their constitutionally protected goods and/or services intrastate at gun shows and intrastate and/or interstate via mail-order and e-commerce. And prohibiting Knight from making contracts with the City as a PASSPort vendor. And prohibiting Knight and/or FFL 01s from selling their constitutionally protected goods and/or services to all law-abiding citizens inside and/or outside of the City and/or State of New York.

## AS FOR A NINTH CAUSE OF ACTION
### [Privileges and Immunities Clause Article IV, Section 2]

**222.** Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint;

**223.** 38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively substantially burden and violate the pre-existing individual right protected by the Privileges and Immunities Clause Article IV, Section 2, to wit, the right to pursue one's profession and/or common calling;

**224.** 38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively should be enjoined and stricken as unconstitutional on their face, and as-applied to Knight and/or FFL 01s, as they violate preexisting rights protected by the Privileges and Immunities Clause Article IV, § 2, 42 U.S.C. § 1983;

**(a)** By denying Knights State CBL he cannot handle any inventory. And only issuing a State FDL to FFL 01s with a brick & mortar store in the City while refusing to amend the application for a State FDL to make it equally applicable to all FFL 01s without a brick & mortar store who can sell constitutionally protected goods and/or services intrastate at gun shows and intrastate and/or interstate via mail-order and/or e-commerce. And prohibiting Knight and/or FFL 01s from transporting inventory to off-site storage locations outside of the City;

**(b)** Prohibiting Knight and/or FFL 01s in the City from selling their goods and/or services intrastate at gun shows and intrastate and/or interstate via mail-order and e-commerce or making contracts with the City as a PASSPort vendor. And prohibiting Knight and/or FFL 01s from selling their goods and/or services to law-abiding citizens inside and/or outside of the State. Because they don't possess a brick & mortar store in the City.

## AS FOR A TENTH CAUSE OF ACTION
### [State Preemption]

**225.**   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint;

**226.**   New York State has preempted the field of firearms regulation in New York State. *See*, e.g., *Matter of Chwick v Mulvey*, 81 AD3d 161, 163 (2d Dept 2010); NYS PL § 265.00, *et seq.,* NYS PL § 400.00, *et seq.*;

**227.**   NYS PL § 400.00, *et seq.* is the exclusive statutory mechanism for firearm licensing in New York State;

**228.**   38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); are preempted by New York State Law and should be declared nullities;

**(a)**   "Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute" (*Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377). Thus, when the Legislature has demonstrated its intent to preempt the field, all local ordinances are preempted, regardless of whether they actually conflict with the State Law (*id*.; *see Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d at 97; *People v De Jesus*, 54 NY2d at 468-470; *Matter of Ames v Smoot*, 98 AD2d at 217-219). Accordingly, in light of the comprehensive and detailed regulatory language and scheme of Penal Law § 400.00, which demonstrates the Legislature's intent to preempt the field of firearm regulation, we find that it preempts the amended ordinance. *See, Chwick v. Mulvey*, NY Slip Op 09911 (2010).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

**(1)**    An order preliminarily and permanently enjoining Defendants; their officers; agents; servants; employees; and all persons in active concert or participation with them who receive actual notice of injunction; from enforcing and implementing; 38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); collectively and individually;

**(2)**    A Declaration that 38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); individually and collectively are facially unconstitutional, and as-applied to Knight and/or FFL 01s; and all law-abiding citizens; as they unduly burden and violate fundamental preexisting individual rights protected by the Commerce Clause; the Equal Protection Clause of the 14th Amendment; the Privileges and Immunities Clause of Article IV, Section 2; the 3rd Party constitutional rights of all law-abiding citizens; 42 U.S.C. § 1981; and NY Civil Rights Law § 4; 42 U.S.C. § 1983;

**(3)**    A Declaration that 38 R.C.N.Y. § 4-03 (t) - (1), (3), (4), and (5); 38 R.C.N.Y. § 5-03 (a), (b); 38 R.C.N.Y. § 5-10 (i); and NYC Admin Code § 10-302. 1 (b), NYC Admin. Code § 10-302 (c), (1); are nullities and preempted by  NYS PL § 400.00, *et seq*.;

**(4)**    Directing Defendants to issue Knight the State Carry Business License (CBL) he applied for;

**(5)**    Directing Defendants to issue a state Firearms Dealer's License (FDL) application equivalent to the PPB-6: Application for License as Gunsmith - Dealer in Firearms under NYS PL § 400.00(1)(n) which is equally applicable to Knight and all FFL 01s who can lawfully sell constitutionally protected goods and/or services; e.g. handguns and/or ammunition; intrastate at gun shows and intrastate and/or  interstate via mail-order; and/or e-commerce;

**(6)**    Directing Defendants to cease their unconstitutional handgun purchase waiting periods which prohibit law-abiding citizens who are already licensed to possess a handgun for self-defense; from purchasing more than (1) handgun during any (90) day period; or any other arbitrary waiting period beyond the time necessary to pass an FBI background check as required to purchase a handgun under federal law;

**(7)**    Granting an award of presumed compensatory damages in at least a nominal amount for the constitutional violations incurred by Knight;

**(8)**    A Declaration that Knight is a prevailing party for purposes of an award of reasonable attorney's fees under 42 U.S.C. § 1988; if Knight retains an attorney at any time during the pendency of this proceeding;

**(9)**    Granting an award of reasonable statutory attorney's fees under 42 U.S.C. § 1988 and any other applicable laws; if Knight retains an attorney at any time during the pendency of this proceeding;

**(10)**   Granting declaratory and injunctive relief; costs and disbursements and such other, further, and different relief as this Court deems just and proper to Knight.

Dated:       May 20, 2022                              Respectfully submitted,
             New York, New York


                                                       **/s/ Cavalier D. Knight**
                                                       Cavalier D. Knight
                                                       Managing Member
                                                       Cavalier Knight LLC
                                                       511 W 165th St # 627
                                                       New York, NY 10032-0634
                                                       +1 (646) 580-7801
                                                       info@cavalierknight.com