UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

CAVALIER D. KNIGHT,

                                    Plaintiff,

                    -against-

CITY OF NEW YORK; KEECHANT SEWELL,

                                    Defendants.
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __  1/17/2024

22-CV-3215 (VEC)(VF)

**REPORT AND
RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO: THE HONORABLE VALERIE E. CAPRONI, United States District Judge**

On April 19, 2022, Plaintiff Cavalier D. Knight ("Knight") commenced this action, *pro se*, against Defendants the City of New York and Keechant Sewell, the then-Commissioner of the New York City Police Department (collectively, "Defendants").[1] Knight filed a second amended complaint on January 25, 2023. ECF No. 62 ("Second Am. Compl."). At bottom, Knight is challenging two aspects of the City's firearms licensing scheme: (1) the requirement that an applicant for a firearms-dealer license maintain a place of business in New York City, see 38 RCNY §§ 4-03(k), (t)(1)(3)(4)(5); NYC Admin. Code § 10-302(c)(1), and (2) the requirement that a person wait 90 days after the purchase of one handgun before the purchase of a second handgun, see NYC Admin. Code § 10-302.1(b). Knight contends that these City regulations violate 42 U.S.C. § 1983, 42 U.S.C. § 1981, 18 U.S.C. § 242, the Second Amendment of the

_____

[1] Keechant Sewell, then-Commissioner of the New York City Police Department ("NYPD"), was sued in her official capacity. On July 17, 2023, Edward Caban replaced Sewell as Commissioner of the NYPD and is therefore substituted as the named defendant. See Fed. R. Civ. P. 25(d) (permitting automatic substitution of a party who is a public official sued in his official capacity when the public official "ceases to hold office" while a suit is pending).

United States Constitution, New York Civil Rights Law § 4, the Due Process and Equal

Protection Clauses of the Fourteenth Amendment, and the Privileges and Immunities Clause of

the United States Constitution. See Second Am. Compl. ¶¶ 154-80. Knight also alleges that the

regulations are preempted by New York Penal Law § 400.00. Id. at ¶¶ 181-83. For the reasons

that follow, I respectfully recommend that Defendants' motion to dismiss be **GRANTED**.

## BACKGROUND

### A. **Factual Background**[2]

Cavalier Knight is a managing member of a small business, Cavalier Knight LLC. See

Second Am. Compl. at 1, 76. Knight wants to sell "handguns and/or ammunition" in New York

City through Cavalier Knight LLC. See id. at ¶¶ 23-24, 38-39, 83, 164, 177. Knight also wants to

bid on contracts with the City to sell law-enforcement equipment and supplies to the City. Id. at

¶¶ 1-2, 39, 184. Although Knight has a "Federal Firearms License 01," id. at ¶ 1, he does not

have a state firearms-dealer license or a "brick & mortar store" in New York City, both of which

are required to sell firearms in New York City. See id. at ¶¶ 1-2, 17, 21, 31. Knight wants to

perform the "administrative and/or managerial activities" of the business from his home and

store his inventory of handguns and/or ammunition "off-site." See id. at ¶¶ 63, 64.

### B. **Procedural Background**

Knight commenced this action on April 19, 2022. ECF No. 1. Knight filed a Second

Amended Complaint on January 25, 2023.[3] See ECF No. 62. Knight alleges that the City's 90-

---

[2] The factual allegations recounted herein are taken from the Second Amended Complaint. For purposes of considering Defendants' motion to dismiss, I accept as true all well-pled factual allegations in Knight's Second Amended Complaint and draw all reasonable inferences in Knight's favor. ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

[3] The procedural history of this case prior to Knight's Second Amend Complaint is recounted in the Report and Recommendation ("R&R") filed on December 28, 2022, familiarity

day waiting period before an individual can purchase a second handgun violates 42 U.S.C. § 1983, 42 U.S.C. § 1981, 18 U.S.C. § 242, the Second Amendment of the United States Constitution, and NY Civil Rights Law § 4. See Second Am. Compl. ¶¶ 154-62, 167-68, 171-72. Knight states that the requirement "serves no lawful purpose" and "prohibits law-abiding citizens from acquiring constitutionally protected goods." Id. at ¶¶ 159, 162. Knight also alleges that the City's requirement that an applicant for a state firearms-dealer license maintain a physical place of business in New York City violates 42 U.S.C. § 1983, 42 U.S.C. § 1981, 18 U.S.C. § 242, the Second Amendment of the United States Constitution, the Commerce Clause of the United States Constitution, NY Civil Rights Law § 4, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the Privileges and Immunities Clause of the United States Constitution. Id. at ¶¶ 154-57, 161-80.  Knight claims that the requirement is unlawful because of the financial burden it imposes on businesses to open a "brick & mortar store" and because it prohibits Knight from transporting firearms to "gun shows and/or off-site storage locations." Id. at ¶¶ 24, 35-36, 43, 56. Finally, Knight claims that both of those requirements are preempted by Penal Law § 400.00, because that provision "is the exclusive statutory mechanism for firearm licensing in New York State." Id. at ¶¶ 181-83.

On March 20, 2023, Defendants moved to dismiss Knight's complaint in its entirety. See ECF Nos. 73-74. On April 18, 2023, Knight filed an opposition to Defendants' motion to dismiss.[4] ECF No. 79. On May 5, 2023, Defendants filed a reply in support of their motion to dismiss. ECF No. 85.

---

of which is presumed. See Amended R&R, ECF No. 54 at pp. 2-4. The Honorable Valerie E. Caproni adopted the R&R on January 24, 2023. ECF No. 61.

[4] Although the text for the docket entry at ECF No. 79 describes the filing as a "Second Letter Motion for Leave to File Letter Motion 02," the document is not a separate motion, but rather, Knight's opposition to Defendants' motion to dismiss.

**LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). In determining if a claim is sufficiently plausible to withstand dismissal, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322, 324 (2007). However, a court does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). Moreover, a court is "obligated to construe a *pro se* complaint liberally," Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret *pro se* submissions "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (citation, internal quotation marks, and emphasis omitted).

**DISCUSSION**

**I.   Standing**

Under Article III of the United States Constitution, the jurisdiction of federal courts is limited to "Cases" and "Controversies." Hedges v. Obama, 724 F.3d 170, 188 (2d Cir. 2013). One aspect of that limitation is the requirement that a plaintiff have standing to sue. Clapper v.

4

Amnesty Int'l USA, 568 U.S. 398, 408 (2013). The doctrine of standing requires that a plaintiff in federal court have "a personal stake in the outcome of the controversy." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).

To establish standing, a plaintiff must satisfy three elements: the plaintiff must have (1) suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The Supreme Court has repeatedly reiterated that "threatened injury must be certainly impending to constitute injury in fact," and that "allegations of possible future injury are not sufficient." ACLU v. Clapper, 785 F.3d 787, 800 (2d Cir. 2015) (citing Clapper v. Amnesty Int'l, 568 U.S. 398, 408 (2013)) (internal quotation marks omitted). As an element of standing, a party invoking federal jurisdiction must also show that any injury-in-fact is "redressable by the Court." Dickerson v. Feldman, 426 F. Supp. 2d 130, 134 (S.D.N.Y. 2006) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). Redressability is the "likelihood that the requested relief will redress the alleged injury." In re Old Carco LLC, 576 F. App'x 37, 39 (2d Cir. 2014) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998)) (internal quotation marks omitted). As the party invoking the Court's jurisdiction, Knight bears the burden of establishing all three elements necessary for standing. Hedges, 724 F.3d at 187.

### A. **The 90-day waiting period**

Under NYC Admin. Code § 10-302.1(b)(c)(1), "[n]o person shall acquire a firearm if such person has acquired a firearm within the previous ninety days." Knight alleges that this waiting period "unconstitutionally limit[s] firearm sales to law-abiding citizens," and he

challenges this rule on behalf of himself and other "law-abiding" customers. Second Am. Compl. ¶¶ 129, 165-66.

Knight appears to be claiming that the injury he will suffer from enforcement of the 90-day waiting period is that it would be "cost-prohibitive" to operate as a firearms dealer if an individual can only purchase a gun every 90 days. See Second Am. Compl. ¶ 129. Knight thus appears to be arguing that his business as a firearms dealer will not be profitable if the waiting period is enforced. Id. Knight, however, is not yet a firearms dealer in New York. See id. at ¶¶ 47, 76, 98. Although Knight has a federal firearms-dealer license, id. at ¶ 1, Knight needs a state license to sell firearms in New York and he does not have that license. See NYC Admin. Code § 10-302(a)(b) (requiring any person to obtain a license before selling firearms in New York). Because Knight is not operating as a licensed firearms dealer in New York, Knight has no basis upon which to assert that the waiting period makes it impossible to operate profitably. Any claimed injury based on a purported inability to make a profit as a firearms dealer is entirely speculative. See United States v. Broadcast Music, Inc., 275 F.3d 168, 178-79 (2d Cir. 2001) (holding that the case was not ripe for adjudication because "the threat of an injury [was] speculative"); Hollander v. Chertoff, No. 08-CV-1521 (WHP), 2008 WL 5191103, at *4 (S.D.N.Y. Dec. 3, 2008) ("[S]tylizing a speculative injury as a present fear that the ultimate harm might occur does not change the conjecture of a future harm into an injury-in-fact.") (quoting Nat'l Council of La Raza v. Gonzales, 468 F. Supp. 2d 429, 441 (E.D.N.Y. 2007)).

Knight also invokes third-party standing, claiming that he is bringing his challenge to the 90-day waiting period on behalf of "all law-abiding citizens who intend to acquire handguns for self-defense in the city." See Second Am. Compl. ¶¶ 130, 166. Courts have recognized that, in certain circumstances, a vendor may challenge a statute on behalf of its customers. See, e.g.,

Maryland Shall Issue, Inc. v. Hogan, 971 F.3d 199, 212-14 (4th Cir. 2020) (holding that a federally licensed firearms dealer that operated several commercial gun stores had standing to challenge a handgun qualification license requirement on behalf of potential customers). But even if Knight could pursue a challenge to the waiting period on behalf of his potential customers, third-party standing still requires a plaintiff to "meet[ ] 'the constitutional prerequisites of standing,'" such as injury-in-fact. Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 174 (quoting Lewis v. Thompson, 252 F.3d 567, 584 (2d Cir. 2001)). And as already discussed, Knight has not pled that he suffered an injury-in-fact because any purported economic injuries caused by the waiting period are entirely speculative and have not materialized.

Further, to invoke third-party standing, a plaintiff must "satisfy 'prudential limitations,' such as "(1) a 'close relation with the third party' and (2) 'some hindrance to the third party's ability to protect his or her own interests.'" Lewis, 252 F.3d at 584 (quoting Lake v. Reno, 226 F.3d 141, 146 (2d Cir. 2000)). Knight asserts standing on behalf of "all law-abiding citizens who intend to acquire handguns for self-defense in the city." See Second Am. Compl. ¶¶ 130, 166. Even if a close relationship exists between a business and its customers, Craig v. Boren, 543 U.S. 125, 192-97 (1976) (holding that beer vendors had standing to raise the rights of prospective young male customers), Knight is not a firearms dealer in New York and thus has no customers. Knight thus has not alleged the existence of a close relationship with a third party sufficient to invoke third-party standing.

**B.  <u>The place-of-business requirement</u>**

NYC Admin. Code § 10-302(c)(1) requires an applicant for a state firearms-dealer license to "maintain a place of business in the city."[5] Knight does not own, and has no plans to own, a "brick & mortar" store from which to operate his firearms-dealer business. <u>See</u> Second Am. Compl. ¶¶ 21, 113-14. Rather, Knight wants to use "his home" to handle the administrative aspect of his business while storing the handguns in a location off-site for e-commerce, gun shows, and selling to the City. <u>See</u> <u>id.</u> at ¶¶ 21, 63, 64, 66, 72, 170.

On April 4, 2022, Frank Ruchala Jr., from the Zoning Division of the New York City Department of City Planning, informed Knight that his home was in a "R7-2 Residence District." <u>Id.</u> at Ex. 12. Under New York City zoning regulations, buildings in an "R7-2 Residence District" may only be used for "residential" and "community facilities." N.Y.C. Zoning Resolution § 22-10. A "community facility" is defined to include places such as "non-profit institutions," "universities," and "libraries," but does not include a business that sells firearms. <u>See</u> N.Y.C. Zoning Resolution §§ 22-11, 12, 13, 14. Thus, even without the place-of-business requirement, the zoning ordinance applicable to Knight's home would bar him from operating a for-profit business, like a firearms dealership, from his residence.

Additionally, N.Y.C. Zoning Resolution § 12-10 prevents an individual conducting a business from his home from selling anything that was not "produced" in the home and bars the products from being stored in a place other than the home. This resolution is applicable to Knight's residence, from where he intends to operate his firearms business. <u>See</u> N.Y.C. Resolution § 22-00. Consequently, Zoning Resolution § 12-10 would also preclude Knight from

---

[5] 38 RCNY § 4-03(k) requires that an applicant file separate applications if they store firearms in separate "branch units" for their business, and 38 RCNY § 4-03(t)(1), (3), (4), and (5) specify which documentation must be provided about an applicant's place of business to show that the applicant has the proper plans and permits for the premises.

selling firearms from his home, because the firearms would not have been produced in his home and Knight is not permitted to store the "product" that is for sale outside the home.

Thus, even without the place-of-business requirement, Knight still could not sell firearms out of his home. Separate New York City zoning resolutions not challenged by Knight bar him from using his home as his place of business to sell firearms.[6] As such, even if the Court assumes that Section § 10-302 is unconstitutional, a ruling striking down that provision would not redress Knight's injury because separate zoning regulations still bar his desired conduct. See M.J. Ent. Enters., Inc. v. City of Mount Vernon, 234 F. Supp. 2d 306, 311-13 (S.D.N.Y. 2002) (determining that redressability requirement was not met because "a ruling by this Court invalidating the special permit use provisions of the Zoning Code would not redress plaintiff's injury," as plaintiff's proposed use was barred by another ordinance); see also Lamar Advert. of Penn, LLC v. Pitman, 573 F. Supp. 2d 700, 708-10 (N.D.N.Y. 2008) (dismissing a First Amendment challenge to a municipal sign law because even if the challenged on-premises limitation were successful, the plaintiff's proposed sign would still have been prohibited by a maximum height zoning restriction that the plaintiff did not challenge). Plaintiff thus has not met the redressability requirement of standing. See Papzian v. Sony Music Entertainment, No. 16-CV-7911 (RJS), 2017 WL 10154498, at *2 (S.D.N.Y. Nov. 22, 2017) (explaining that standing requires a plaintiff to allege that his injury in fact is redressable by the court); Kent v. PoolTogether, Inc., No. 21-CV-6025 (GB) (CLP), 2023 WL 3867305, at *5 (E.D.N.Y. June 7,

---

[6] Knight alleges that his firearms business falls within the "home occupation" provision of a residence, claiming that the provision conflicts with the brick & mortar requirement of NYC Admin. Code § 10-302(c)(1). Second Am. Compl. ¶ 63. However, under the "home occupation" provision, individuals are not allowed "to sell articles produced elsewhere than on the premises." Zoning Resolution § 12-10. That provision also does not allow individuals to "store materials or products outside a principal or accessory building or other structure." Id.

2023) (finding no redressability where the plaintiff's requested relief was not recoverable under New York law).

In short, Knight lacks standing to challenge the City's 90-day waiting period and the place-of-business requirement.

## II.   The Second Amendment and Civil Rights Law § 4

Knight contends that the 90-day waiting period and the place-of-business requirement violate the Second Amendment of the United States Constitution and the New York State Civil Rights Law § 4. See Second Am Compl. (Second Cause of Action). Knight alleges that the City's requirements infringe on and substantially burden an individual's right to keep and bear arms and are thus unconstitutional on their face and as applied to Knight and other law-abiding citizens. Id. at ¶¶ 154-56.

The Second Amendment states that "the right of the people to keep and bear Arms[ ] shall not be infringed." U.S. Const. Amend. II. At the core of the Second Amendment is an individual's right to possess weapons in the home and in public for self-defense. New York State & Rifle Assoc., Inc. v. Bruen, 142 S. Ct. 2111, 2134-35 (2022) (concluding that the Second Amendment's plain text guarantees the right of an individual to bear arms in public for self-defense); Heller v. District of Columbia, 554 U.S. 570, 584 (2008) (explaining that the right to "bear arms" means the right to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person") (alteration in original).

In Heller v. District of Columbia, 554 U.S. 570 (2008), the United States Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." Id. at 592. Following Heller, courts applied a "'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny."

<u>Bruen</u>, 142 S. Ct. at 2125. The first step of the analysis involves ascertaining whether a particular gun regulation implicates conduct protected by "the original scope of the right based on its historical meaning," because if it does not, "then the analysis can stop there; the regulated activity is categorically unprotected." <u>Id.</u> at 2126. At the second step, a court examines "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." <u>Id.</u> The Court in <u>Bruen</u> confirmed that step one of the analysis "is broadly consistent with <u>Heller</u>." <u>Id.</u> at 2127. But it eliminated step two of the analysis, explaining that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government must therefore "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." <u>Id.</u> at 2129-30.

<u>Heller</u> and <u>Bruen</u> make clear, however, that the right to keep and bear arms is "not unlimited." 554 U.S. at 595. "[T]he right to keep and bear arms is 'not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 786 (2010); <u>see also</u> <u>Heller</u>, 554 U.S. at 626 (explaining that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"). Indeed, although the Court in <u>Bruen</u> struck down New York's "may issue" firearms-permitting regime, which required citizens to show a "special need" for self-defense and submit to a discretionary licensing process in order to exercise their Second Amendment right to carry arms, the Court nonetheless emphasized that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which a general desire for self-defense is sufficient to obtain a permit." <u>Bruen</u>, 142 S. Ct. at 2138 n.9; <u>see also id.</u> at 2161 (Kavanaugh, J., concurring) ("The Court's decision

does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense [and] [i]n particular . . . does not affect the existing licensing regimes—known as 'shall-issue' regimes—that are employed in 43 States.").

### A.  The 90-day waiting period

Knight has not pled a claim that the 90-day waiting period violates the Second Amendment. As discussed, at the first step of the analysis, a court must examine whether the conduct is protected by the Second Amendment, because if the "Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Bruen, 142 S. Ct. at 2126. The question thus becomes whether a waiting period before the purchase of a second handgun is conduct covered by the text of the Second Amendment. It is not.

The City's 90-day waiting period does not restrict who may keep or bear firearms, whether inside the home or in public. First, the requirement does not limit an individual's ability to carry a firearm in public for self-defense. The requirement also does not address who can obtain a firearm, what must be shown by that person to obtain the firearm, or place any restriction whatsoever on the purchase of the person's first handgun. Second, the rule does not place any restrictions on possession of a handgun in the home. All the challenged requirement does is limit how often an individual can purchase a firearm, requiring a 90-day waiting period after the purchase of one firearm before the purchase of a second firearm. See NYC Admin. Code § 10-302.1 (b)(c)(1). The City's requirement therefore does not concern the possession of a firearm in the home or in public for self-defense—the core conduct protected by the Second Amendment. See Bruen, 142 S. Ct. at 2125 (explaining that Heller and McDonald held that the Second Amendment protects an individual right to keep and bear arms for self-defense).

In <u>Bruen</u>, the Court suggested that "lengthy" license processing wait times or "exorbitant" licensing fees may be grounds for findings of unconstitutionality. <u>Bruen</u>, 597 U.S. at 2138 n.9. But Knight has not alleged or argued that the 90-day waiting period constitutes a "lengthy wait time[]" before the purchase of a second firearm. <u>See</u> <u>People v. Gunn</u>, No. 1-22-1032, 2023 WL 6280229, at *5 (Ill. App. Ct. 1st Dist. Sept. 27, 2023) (upholding a state's 90-day waiting period for the state police to issue applicants their concealed carry license).

Therefore, because the requirement does not prevent a person from keeping or bearing arms, the 90-day waiting period does not infringe on core conduct protected by the Second Amendment. Knight thus has not alleged a Second Amendment violation. Moreover, "the same right" protected by the Second Amendment is also "protected by statute as part of New York's Civil Rights Law" Section 4. <u>Haverstraw Town Police v. C.G.</u>, 79 Misc. 3d 1005, 1010 (N.Y. Sup. Ct. Apr. 20, 2023). New York Civil Rights Law § 4 "is interpreted consistently with federal Second Amendment jurisprudence." <u>Id.</u> Consequently, Knight's failure to plead a violation of the Second Amendment is also fatal to his claim under New York Civil Rights Law § 4.

### B.  The place-of-business requirement

Knight has not pled a claim that the place-of-business requirement violates the Second Amendment, because the conduct at issue also is not covered by the text of the Second Amendment. Here, too, the City's place-of-business requirement does not restrict who may keep or bear firearms, whether inside the home or in public. First, the City's regulation places no restrictions on an individual's ability to carry a handgun in public for self-defense. The rule does not regulate the acquisition of a gun. Nor does the rule speak to who can obtain a state firearms-dealer license. Second, the regulation does not concern possession of a handgun, whether inside or outside the home. It therefore places no restrictions on a person's ability to possess a gun for

self-defense. All the challenged regulation does is require a person seeking a state firearm-dealer license to have a "place of business in the city." NYC Admin. Code § 10-302(c)(1). Consequently, the City's requirement concerns neither the possession of a firearm in the home or in public for self-defense.

Knight claims that the place-of-business requirement impedes his ability to sell handguns at gun shows, through mail order, or e-commerce. Second Am. Compl.¶ 53. But this conduct concerns the commercial sale of firearms. The plain text of the Second Amendment protects an individual's right to "possess and carry weapons in case of confrontation," and that right "does not imply a further right to sell and transfer firearms." United States v. Tilotta, No. 19-CR-4768 (GPC), 2022 WL 3924282, at *5 (S.D. Cal. Aug. 30, 2022) (quoting Bruen, 597 U.S. at 2127) (internal quotation marks omitted); see also Teixeira v. County of Alameda, 873 F.3d 670, 683 (9th Cir. 2017) ("Nothing in the text of the Amendment, as interpreted authoritatively in Heller, suggests the Second Amendment confers an independent right to sell or trade weapons."). Indeed, in Heller and McDonald the Court explicitly stated that its opinion should not be seen as "cast[ing] doubt" on "laws imposing conditions and qualifications on the commercial sale of arms." See Heller, 554 U.S. at 626-27; McDonald, 561 U.S. at 787 (Alito, J.); see also Bruen, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).

In sum, the challenged requirement does not operate to prevent anyone from keeping or bearing arms—the core conduct protected by the Second Amendment. The place-of-business requirement therefore does not violate the Second Amendment. And because Knight has not pled a violation of the Second Amendment, he also has failed to plead a violation of New York's Civil Rights Law § 4.

**III.**   <u>**Knight's Remaining Claims**</u>

Knight also contends that the place-of-business requirement violates the Commerce Clause, 18 U.S.C. § 242, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Privileges and Immunities Clause, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. He also claims that the 90-day waiting period violates 18 U.S.C. § 242. <u>See</u> Second Am. Compl. ¶¶ 154-80. As discussed below, all of these claims fail.

**A.**  <u>**Commerce Clause**</u>

Knight claims that the place-of-business requirement discriminates against interstate commerce by prohibiting Knight and other federal firearms-license holders from selling firearms "intrastate at gun shows or intrastate and/or interstate via mail-order and/or e-commerce." <u>Id.</u> at ¶¶ 21, 83, 164. He also claims that it prohibits all federal license holders outside of New York City from "conducting any business in interstate commerce within the City." <u>Id.</u> at ¶ 31. The place-of-business requirement applies statewide, pursuant to Penal Law § 400.00, which requires that a firearms dealer in New York "maintain a place of business in the city or county where the license is issued." Penal Law § 400.00(1-a).

The Commerce Clause in the Constitution provides that "Congress shall have Power to . . . regulate Commerce within foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. I, § 8, cl. 3. "This express grant of power to Congress contains 'a further, negative command, known as the dormant Commerce Clause.'" <u>Town of Southold v. Town of East Hampton</u>, 477 F.3d 38, 47 (2d Cir. 2007) (quoting <u>Okla. Tax Comm'n v. Jefferson Lines, Inc.</u>, 514 U.S. 175, 179 (1995)). "The fundamental objective of the dormant Commerce Clause is to 'preserv[e] a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors.'" <u>Brown & Williamson Tobacco</u>

Corp. v. Pataki, 320 F.3d 200, 208 (2d Cir. 2003) (quoting Gen. Motors Corp. v. Tracy, 519 U.S. 278, 299 (1997)).

   As the Second Circuit has explained, in analyzing a challenged local law under the dormant Commerce Clause, the court must "first determine whether it clearly discriminates against interstate commerce in favor of intrastate commerce, or whether it regulates evenhandedly with only incidental effects on interstate commerce." Town of Southold, 477 F.3d at 47. In this context, "discrimination" means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Waste Sys., Inc. v. Dep't of Envtl. Quality, 511 U.S. 93, 99 (1994). A local law may "clearly discriminate" against interstate commerce in three ways: (1) "by discriminating against interstate commerce on its face"; (2) "by harboring a discriminatory purpose"; or (3) "by discriminating in its effect." Town of Southold, 477 F.3d at 48. A law that clearly discriminates against interstate commerce in favor of intrastate commerce is "virtually invalid per se." Id. at 47. If the law only incidentally burdens interstate commerce, then the law "will be struck down if the burden imposed on interstate commerce clearly exceeds the putative local gains." Id.

   Knight has not plausibly alleged that the place-of-business requirement clearly discriminates against interstate commerce. A law discriminates against interstate commerce if there is "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Town of Southold, 477 F.3d at 47. To state a claim for "discrimination in violation of the Commerce Clause, a plaintiff must 'identify an[ ] in-state commercial interest that is favored, directly or indirectly, by the challenged statutes at the expense of out-of-state competitors.'" Selevan v. New York Thruway Auth., 584 F.3d 82, 95 (2d Cir. 2009) (quoting Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 169 (2d Cir.

2005)). The place-of-business requirement applies only to dealers in New York. It imposes no requirements on firearms dealers outside of New York. And Knight has not identified an in-state commercial interest that is favored at the expense of an out-of-state interest. See Hopkins Hawley LLC, 518 F. Supp. 3d at 716 (holding that a New York State policy regulating restaurant dining conditions due to COVID-10 infections did not violate the Dormant Commerce Clause because it only applied to New York City and New York State restaurants); see also Selevan, 584 F.3d at 95 (explaining that plaintiff must identify both an in-state competitor and an out-of-state competitor).

Moreover, a "nondiscriminatory regulation that regulates even-handedly to effectuate a legitimate local public interest is nevertheless unconstitutional if the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." Selevan, 584 F.3d at 95. Knight complains that the place-of-business requirement prohibits him and other federal license holders "from selling any firearms intrastate at gun shows or intrastate and/or interstate via mail-order and/or e-commerce." See, e.g., Second Am. Compl. ¶¶ 83-84, 92. To the extent Knight complains of a burden on the ability to sell firearms at "intrastate" gun shows, that is not a burden on interstate commerce; it is a burden on the ability to sell within New York State. And to the extent the place-of-business requirement applies to the internet sale of firearms, it applies to all firearms dealers selling from New York, regardless of whether they are selling to customers inside or outside the state. Knight thus has not alleged any unequal or excessive burden on interstate commerce resulting from the place-of-business requirement.

In sum, Knight has not pled a viable claim that the place-of-business requirement violates the Commerce Clause.

**B.  18 U.S.C. § 242**

Knight claims that both the 90-day waiting period and the place-of-business requirement violate 18 U.S.C. § 242. Second Am. Compl. ¶¶ 158-62. Knight claims that the 90-day waiting period violates this statute, because it "contradict[s] the government's transcendent interest in promoting public safety" and "strikes at the core of the [Second] Amendment right to keep and bear arms in public for self-defense." Id. at ¶¶ 160, 162. Similarly, Knight alleges that the place-of-business requirement violates 18 U.S.C. § 242, because it prohibits federal firearms-license holders from "receiving inventory and selling handguns and/or ammunition in intrastate and/or interstate commerce." Id. at ¶ 162.

18 U.S.C. § 242 is a criminal statute.[7] And as courts have made clear, there is no private right of action, express or implied, for an individual citizen, like Knight, to enforce a potential violation of that criminal statute. See Futia v.  Roberts, No. 23-CV-1774 (VB), 2023 WL 8237246, at *6 (S.D.N.Y. Nov. 28, 2023) (concluding that 18 U.S.C. § 242 has no express or implied private right of action); Storm-Eggink v. Gottfried, 409 F. App'x 426, 427 (S.D.N.Y. 2011) (holding that 18 U.S.C. § 242 does not create a private right of action); McCaffrey v. Gatekeeper USA, Inc., No. 14-CV-493 (VSB), 2023 WL 2631904, at *2 (S.D.N.Y. Mar. 24, 2023) (holding that 18 U.S.C. § 242 is a criminal statute "that [does] not provide [individual defendants] with any relevant rights"); MacNeal v. N.Y. City Commission on Human Rights, No. 23-CV-5890 (LGS), 2023 WL 8457918, at *2 (S.D.N.Y. Nov. 20, 2023) (concluding that plaintiff could not assert a claim under 18 U.S.C. § 242). Therefore, to the extent Knight is

---

[7] 18 U.S.C. § 242 makes it a crime for "a person, acting under color of any law, to willfully deprive an individual of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." United States v. Scott, 833 F. App'x 884, 887 (2d Cir. 2020) (quoting 18 U.S.C. § 242) (internal quotation marks omitted).

attempting to enforce 18 U.S.C. § 242, his claims fail because the statute provides no private right of action.

**C.  Fourteenth Amendment Equal Protection Clause**

Knight claims that the place-of-business requirement violates the Equal Protection Clause because the City refuses to issue licenses to individuals who do not have a "brick & mortar" store. Second Am. Compl. ¶ 170. The Supreme Court's "equal protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others." Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601 (2008); see also Fierro v. City of New York, No. 20-CV-09966 (GHW), 2022 WL 428264, at *7 (S.D.N.Y. Feb. 10, 2022) ("The Fourteenth Amendment[ ] . . . offers some level of protection against all discrimination, stating that no state shall deny to any person within its jurisdiction the equal protection of the laws.") (citation and quotation marks omitted). "When a plaintiff alleges an equal protection violation (without also alleging discrimination based upon membership in a protected class), the plaintiff must plausibly allege that he or she has been intentionally treated differently from others similarly situated and no rational basis exists for that different treatment." Progressive Credit Union v. City of New York, 889 F.3d 40, 49 (2d Cir. 2018).

Here, Knight has not alleged that New York City has treated him differently than any other individual seeking to sell firearms in the City. Nor could he, because the place-of-business requirement, by its plain terms, applies to all applicants seeking a firearms-dealer license in New York. See NYC Admin. Code § 10-302(a) (stating that it shall be unlawful for "any person or business" to sell firearms unless they obtain a license in the manner described within the provision); 38 RCNY § 4-03(k) (requiring any license applicant with a branch unit in New York City to file a separate license); 38 RCNY § 4-03(t) (requiring all license applicants to submit

plans and permits related to their place of business prior to approval); see also Penal Law § 400.00(1-a). Knight has thus failed to state a violation of the Equal Protection Clause.

**D.   Fourteenth Amendment Procedural Due Process Clause**

Knight alleges that the place-of-business requirement violates the Procedural Due Process Clause because the requirement will not apply equally to all holders of a federal firearms license. Second Am. Compl. ¶ 174. To state a procedural due process claim, a plaintiff must establish "(1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process." Tooly v. Schwaller, 919 F.3d 165, 173 (2d Cir. 2019) (citation omitted). Knight's claim fails because he has not pled any facts to plausibly allege that any deprivation of a protected liberty or property interest occurred without notice and a hearing. See Basciano v. Child Support Enf't Mt. Vernon Off., No. 20-CV-11797 (CM), 2020 WL 550569, at *2 (S.D.N.Y. Feb. 4, 2020) (stating that the "Due Process Clause only protects against deprivations without due process of law" where the fundamental requisite of due process is the opportunity to be heard in a meaningful manner) (quoting Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 464 (2d Cir. 2006) and Goldberg v. Kelly, 397 U.S. 254, 267 (1970)) (internal quotation marks omitted).

Knight is not challenging the adequacy or sufficiency of the application process for a firearms-dealer license in New York City. Cf. Second Am. Compl. ¶¶ 18, 22, 174-75. Knight is not claiming that he was denied notice and an opportunity to challenge the denial of a license, nor is Knight challenging the denial of a license itself. Knight thus has not stated a violation of the Fourteenth Amendment's Procedural Due Process Clause.

**E.  <u>Privileges and Immunities Clause</u>**

Knight claims that the place-of-business requirement hinders his ability "to pursue [his] profession or common calling" and thus violates the Privileges and Immunities Clause. <u>See</u> Second Am. Compl. ¶¶ 20, 22, 115-16. To state a claim under the Privileges and Immunities Clause, a plaintiff must first allege that "a State has . . . discriminated against out-of-staters with regard to the privileges and immunities it accords its own citizens." <u>Connecticut ex rel. Blumenthal v. Crotty</u>, 346 F.3d 84, 94 (2d Cir. 2003).

Knight is a New York County resident, <u>see</u> Second Am. Compl. at 1, 76, challenging requirements imposed by the jurisdiction where he resides.[8] <u>See Stoianoff, v. Comm'r of Motor Vehicles</u>, 107 F. Supp. 2d 439, 447 (S.D.N.Y. 2000) (holding that a New York State citizen challenging the legislative action of his own state "has no recourse to the Privileges and Immunities Clause"). And, again, the place-of-business requirement applies to all individuals, whether residents of New York or out-of-staters, seeking to obtain a firearms-dealer license in New York. Knight thus has not alleged any discrimination by New York against out-of-staters in the process of obtaining a firearms dealer license in the state. Knight therefore fails to state a claim under the Privileges and Immunities Clause.

**F.  <u>42 U.S.C. § 1981</u>**

Knight states that the place-of-business requirement and 90-day waiting period both "burden the right to make contracts, to own property, to sue in court, and enjoy the full protection of federal law." Second Am. Compl. ¶ 172. But any claim under 42 U.S.C. § 1981 fails because the statute "does not provide a separate private right of action against state actors." <u>Duplan v. City of New York</u>, 888 F.3d 612, 621 (2d Cir. 2018). Instead, 42 U.S.C. § 1983 is the

---

[8] Knight identifies himself as a New York County resident, Second Am. Compl. ¶ 4, and his mailing address is in New York City, <u>id.</u> at 76.

"*exclusive federal remedy* for violation of the rights guaranteed in § 1981." Id. at 619 (emphasis in original).

Even analyzed under Section 1983, Knight's claim fails. See Nnebe v. City of New York, No. 22-CV-3860 (VEC) (SLC), 2023 WL 2393920, at *7 (S.D.N.Y. Jan 30, 2023) (explaining that claims of *pro se* plaintiff alleged under Section 1981 should be construed as raising claims under Section 1983). To state a claim under Section 1983, a plaintiff must plausibly allege "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" Giordano v. City of New York, 274 F.3d 740, 750 (2d Cir. 2001) (quoting American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)). Moreover, "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). As already discussed, Knight has not plausibly alleged a violation of the Second or Fourteenth Amendments. And Knight cannot allege a stand-alone violation of Section 1983. Knight thus has not alleged a plausible Section 1983 claim, and he has no separate private right of action under Section 1981.

## IV.   **Preemption**

Knight contends that the place-of-business requirement and the 90-day waiting period are preempted by Penal Law § 400.00, a "comprehensive and detailed regulatory" scheme that evinces an intent by the New York Legislature to preempt local laws that regulate firearms. Second Am. Compl. ¶¶ 181-83. Knight is mistaken.

Preemption "embodies the untrammeled primacy of the Legislature to act . . . with respect to matters of State concern." Ass'n of Home Appliance Mfrs. v. City of New York, 36 F. Supp. 3d 366, 375 (S.D.N.Y. 2014) (quoting Albany Area Builders Ass'n v. Town of Guilderland, 74 N.Y.2d 372, 377 (1989)). "The New York Court of Appeals has explained that a

local law is preempted 'where there is a direct conflict with a state statute (conflict preemption)' or where the local law is inconsistent with state law because it 'prohibit[s] what would be permissible under State law, or impose[s] prerequisite additional restrictions on rights under State law, so as to inhibit the operation of the State's general laws.'" New York Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 93 (2d Cir. 2017) (quoting Eric M. Berman, P.C. v. City of New York, 25 N.Y.3d 684, 690 (2015)).

In Penal Law § 400.00, the Legislature created a licensing regime for the possession of "firearms" in New York, making it unlawful to possess a handgun in the state without a license. See Juzumas v. Nassau Cty., 33 F.4th 681, 683-84 (2d Cir. 2022). The eligibility requirements for a license are governed by Penal Law § 400.00(1). However, the Legislature expressly permitted the City to develop its own application and license for firearms, issue special permits for licensees seeking to carry a firearm in the City, and set its own licensing fee. See Penal Law §§ 400.00(3)(a), (6), (7), (14). Further, Penal Law § 400.30, which was added by the Legislature in 2022 and became effective on September 1, 2022, states that "[n]othing in this article shall be construed to impair or in any way prevent the enactment or application of any local law, code, ordinance, rule or regulation that is more restrictive than any requirement set forth in or established by this article." There is no indication in the text of Penal Law § 400.00 that the Legislature intended to preempt New York City's licensing regulations. And, the broad language of Penal Law § 400.30 evinces an intent by the Legislature to allow the City's requirements, even if more restrictive than those imposed in Penal Law § 400.00. Knight therefore has not alleged a plausible claim of preemption.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that Defendants' motion to dismiss be **GRANTED**.

      **SO ORDERED.**

DATED:     New York, New York
             January 17, 2024

                                     _____
                                     VALERIE FIGUEREDO
                                     United States Magistrate Judge

**PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Valerie E. Caproni. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**